1   MORGAN, LEWIS & BOCKIUS LLP
    Thomas S. Hixson, Bar No. 193033
2   thomas.hixson@morganlewis.com
    Spencer H. Wan, Bar No. 304329
3   spencer.wan@morganlewis.com
    One Market, Spear Street Tower
4   San Francisco, CA  94105-1596
    Tel:     +1.415.442.1000
5   Fax:     +1.415.442.1001

6   ORACLE CORPORATION                      ORACLE CORPORATION
    Dorian Daley, Bar No. 129049            Jeffrey S. Ross, Bar No. 138172
7   dorian.daley@oracle.com                 jeff.ross@oracle.com
    Deborah K. Miller, Bar No. 95527        10 Van de Graaff Drive
8   deborah.miller@oracle.com               Burlington, MA  01803
    500 Oracle Parkway, M/S 5op7            Tel:     +1.781.744.0449
9   Redwood City, CA  94065                 Fax:     +1.781.238.6273
    Tel:     +1.650.506.4846
10  Fax:     +1.650.506.7114

11  Attorneys for Plaintiffs
    ORACLE AMERICA, INC., and ORACLE
12  INTERNATIONAL CORPORATION

13

14                      UNITED STATES DISTRICT COURT

15                     NORTHERN DISTRICT OF CALIFORNIA

16

17  ORACLE AMERICA, INC., a Delaware        Case No.:
    corporation; ORACLE INTERNATIONAL
18  CORPORATION, a California corporation   COMPLAINT FOR DAMAGES AND
                                            INJUNCTIVE RELIEF FOR:
19               Plaintiffs,
                                            (1)  COPYRIGHT INFRINGEMENT;
20        v.                                (2)  ALTER EGO LIABILITY;
                                            (3)  FRAUDULENT TRANSFER.
21  BERND APPLEBY; JAMES OLDING;
    TERIX COMPUTER COMPANY, INC., a
22  California corporation; TUSA, INC., a
    Delaware corporation; ERMINE IP, INC., a
23  Delaware corporation; and ERMINE
    SERVICES, LLC, a Delaware company; and
24  DOES 1–50,

25               Defendants.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

DB3/ 200840742.3

Plaintiffs Oracle America, Inc. ("Oracle America"), and Oracle International Corporation ("OIC") (together, "Oracle" or "Plaintiffs") for their Complaint against Defendants Bernd Appleby ("Appleby"), James Olding ("Olding"), TERiX Computer Company, Inc. ("Terix"), TUSA, Inc. ("TUSA"), Ermine IP, Inc. ("Ermine IP"), Ermine Services, LLC ("Ermine Services") (together, "Defendants") allege as follows based on their personal knowledge as for themselves, and on information and belief as to the acts of others:

## I.    INTRODUCTION

1.    Defendants Bernd Appleby and James Olding are the masterminds of an unlawful scheme to infringe Oracle's copyrights in its proprietary Solaris operating system and System Firmware.  As the joint owners, Chief Executive Officer, and Chief Operating Officer of Terix, they created a plan to misappropriate Solaris and System Firmware updates from Oracle and then reproduce and distribute them to Terix's own customers.  The core of this plan was a "one-to-many" practice:  For a large number of customers, Terix would have them purchase a support contract with Oracle covering one server, and then – in violation of Oracle's software licenses and technical support policies – Terix would use the access credentials from those support agreements to download Solaris and System Firmware updates from My Oracle Support to support many (sometimes hundreds) of those customers' other, unsupported servers.  In addition, Terix itself fraudulently procured support contracts with Oracle, each ostensibly for a single server, under the name of a fictitious alias and using the names of shell companies Appleby and Olding controlled.  Terix then used those support contracts to download Solaris and System Firmware updates and reproduce and distribute them to many of its customers.

2.    This "one-to-many" practice was unauthorized, and every Solaris and System Firmware update provided in that manner was infringing.  Appleby and Olding caused Terix to engage in this illegal business model for years because it enabled Terix to provide software support (without incurring any software development costs) and thus poach Oracle customers that wanted software support for their Oracle Sun-branded servers and would otherwise have purchased that support from Oracle for all the servers that needed support.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

Appleby and Olding knew their plan was not permitted by Oracle's licenses or support policies, and they went to great lengths to hide it, meanwhile enriching their company – and themselves – with this infringing scheme.

3. Oracle sued Terix in July 2013 for copyright infringement and related claims. During discovery, the full scope of Terix's copyright infringement – and Appleby and Olding's role in directing it – came to light. Faced with the irrefutable evidence of its wrongdoing, and the significant damages caused to Oracle, on June 10, 2015, Terix stipulated to judgment against it on Oracle's claims. The federal court judgment required Terix to pay $57,723,000 in damages and contained a permanent injunction against further copyright infringement.

4. But Appleby and Olding had another trick up their sleeve. In the months leading up to the federal judgment, they created TUSA, Ermine IP and Ermine Services – shell companies under Appleby and Olding's ownership and control. On February 17, 2016, Appleby and Olding then caused Terix to execute a purported "assignment for the benefit of creditors." In this transaction, Terix assigned substantially all of its assets to an entity called "Terix (assignment for the benefit of creditors) LLC" ("Terix LLC") for nothing in return. On the same day, Terix LLC then transferred all of those assets to TUSA, Ermine IP and Ermine Services for effectively nothing in return. TUSA, Ermine IP and Ermine Services now collectively do business, and earn profits, under the name "Terix," using the former Terix assets. Meanwhile, the Terix entity subject to the federal judgment is penniless and in default on its debt to Oracle. This transfer of assets from Terix to TUSA/Ermine IP/Ermine Services – washed through a bogus "assignment for the benefit of creditors" – was a fraudulent transfer to thwart the federal judgment.

5. Oracle now brings this action to enforce the federal judgment and void this fraudulent transfer. In addition, Oracle sues Appleby and Olding in their individual capacities for their vicarious, contributory and alter ego liability for Terix's misconduct, for which they are responsible. They created, directed and profited from Terix's illegal scheme, and as their recent

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

2

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

fraudulent transfer shows, they are remorseless and continue not to accept responsibility for their years of illegal conduct.

## II.      THE PARTIES

6.      Plaintiff Oracle America is a Delaware corporation duly authorized to do business in the State of California, with its principal place of business in Redwood City, California.  Oracle develops and licenses certain intellectual property, including copyrighted software programs, and provides related support and consulting services to its licensed customers. Sun Microsystems, Inc. ("Sun")[1] changed its name to Oracle America, into which Oracle USA, Inc. was then merged.  Plaintiff Oracle America continues to hold all of Sun's interest, rights, and title to the copyrights for Solaris 8, 9 and 10 and the rights to bring claims for infringement of those copyrights.

7.      Plaintiff OIC is a California corporation with its only place of business in Redwood City, California.  OIC owns and licenses certain intellectual property, including copyrighted software programs.  OIC and Oracle America together hold all interest, right and title to the copyright for Solaris 11 and the right to bring claims for infringement of that copyright. OIC, either on its own or together with Oracle America (depending on the registration), holds all interest, right and title to the copyrights for Oracle System Firmware and the right to bring claims for infringement of those copyrights.

8.      Terix is a California corporation with its principal place of business in Sunnyvale, California.  Terix held itself out as a third party maintenance provider that provided support for, among other things, Oracle hardware and Oracle's proprietary Solaris operating system.  Today Terix is an empty shell because Appleby and Olding fraudulently transferred all of Terix's assets to TUSA, Ermine IP and Ermine Services.

---

[1] Sun developed and sold computer hardware and the Solaris operating system which runs that hardware.  Sun computers, which Oracle continues to sell under the Sun brand name, may be referred to as Oracle or Sun computer hardware interchangeably throughout this Complaint.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

3

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

9.     TUSA, Ermine IP and Ermine Services are Delaware corporations with their principal place of business in Sunnyvale, California.  They currently do business under the name "Terix" using the fraudulently transferred Terix assets.

10.     Bernd Appleby is the President of Terix; the President, Chief Financial Officer, and Chief Executive Officer of TUSA; the President, Chief Financial Officer, and Chief Executive Officer of Ermine IP; and Chief Executive Officer of Ermine Services.  He owns or co-owns all of these companies together with James Olding.  Appleby is a California resident.  He lives in the Northern District of California.

11.     James Olding is the Chief Operating Officer of Terix and the Secretary of TUSA and Ermine IP.

12.     Oracle is currently unaware of the true names and capacities of Does 1 through 50, inclusive, whether individual, partnership, corporation, unincorporated association, or otherwise.  Due to the surreptitious nature of Defendants' actions, and the complicated nature of their scheme, the identities of Does 1 through 50 have been concealed from Oracle, preventing Oracle from identifying them by name.  After discovery, which is necessary to ascertain the true names and capacities of Does 1 through 50, Oracle will amend its complaint to allege the necessary identifying details.

13.     Terix, TUSA, Ermine IP, Ermine Services and Appleby are subject to personal jurisdiction in California because they are subject to general jurisdiction in this forum.  Terix, TUSA, Ermine IP, Ermine Services are headquartered in Sunnyvale, California, and their contacts with the state are substantial, continuous and systematic.  Appleby is domiciled in California.

14.     In addition, all Defendants are subject to specific jurisdiction here because they have committed wrongful intentional acts in this state, expressly aimed at Oracle, which Defendants knew or should have known is also a resident of California, and caused harm that they knew or should have known was likely to be suffered by Oracle in Redwood City, California.  All Defendants also purposefully availed themselves of California law, specifically California Code

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB3/ 200840742.3

4

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

of Civil Procedure §§ 493.010 to 493.060 and 1800-1802, in attempting to carry out the fraudulent transfer of Terix's assets to the other California-headquartered transferees, which is an additional basis for personal jurisdiction.  Appleby and Olding are also subject to personal jurisdiction here for the additional reason that they are and were the alter egos of Terix, Sevanna Financial, Inc., and West Coast Computer Exchange, three California-based companies.

## III.     JURISDICTION

15.     Oracle's first claim for relief arises under the Federal Copyright Act, 17 U.S.C. §§ 101.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

16.     This Court has supplemental subject matter jurisdiction over the pendant state law claims under 28 U.S.C. § 1367, because these claims are so related to Oracle's claim under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

17.     This Court also has ancillary jurisdiction to enforce the federal judgment by avoiding fraudulent transfers and transactions aimed at thwarting the Court's judgment.  This Court specifically retains jurisdiction to enforce the judgment entered in *Oracle America, Inc., et al. v. Terix Computer Company, Inc.*, et al., Case No. 5:13-cv-03385 PSG, Dkt. 652 ¶ 6 ("The Court retains jurisdiction over any action to enforce this Stipulated Judgment.").

## IV.     VENUE

18.     Venue in this District is appropriate because nearly every Defendant is based here and Defendants committed a substantial amount of the wrongful intentional acts here, which they also expressly aimed at Oracle.  Defendants knew or should have known Oracle resides in this District, and caused harm that they knew or should have known Oracle would likely suffer in this District.  As a result, Defendants would be amenable to personal jurisdiction if this District were a separate state, and therefore venue in this District is appropriate under 28 U.S.C. § 1400(a).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

5

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

V.      **INTRADISTRICT ASSIGNMENT**

19.      Because this action alleges, among other things, claims for copyright infringement, it is an intellectual property action and may be assigned on a district-wide basis pursuant to Civil L.R. 3-2(c).

VI.      **FACTUAL ALLEGATIONS**

A.      **Oracle's Computer Systems and Support Materials**

20.      Oracle develops, manufactures, markets and distributes enterprise business hardware and software systems, and provides related technical support and consulting services. The hardware systems that Oracle develops and distributes involve several components, all of which Oracle supplies.  In a simplified view, the foundation of the system (or "stack" as it is sometimes called) is typically storage and servers, such as Oracle's Sun servers.  The server requires an operating system to run it, such as Oracle's Solaris operating system, which is an analog to Microsoft's Windows operating system for personal computers.  A typical configuration would also employ a database to manage business data, middleware to allow the database to interact with various applications that provide the business logic to be performed by the system, and the applications themselves, such as human resources software for payroll processing or financials software for financial reporting.

21.      Oracle's comprehensive line of Sun server systems provides world-class performance for businesses of all sizes, and includes some of the most reliable, scalable, and powerful systems in the industry.  Oracle also develops and licenses the Solaris operating system and related System Firmware to run its Sun servers.  Solaris is one of the most advanced operating systems available for enterprise use.  It provides innovative, built-in features that allow for high availability, advanced security, efficiency, and industry-leading scalability/performance, and are targeted at business and public sector customers.

22.      As is typical in the computer industry, Oracle offers technical support services for its hardware systems, including the Solaris operating system.  For example, customers who own Oracle/Sun hardware may also purchase technical support services from Oracle which entitle those customers to updates, patches and fixes to the Solaris operating system

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

6

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

("Solaris updates") and updated versions of System Firmware ("System Firmware updates") for their Oracle/Sun hardware.  The Solaris operating system and System Firmware are copyrighted, and Solaris and System Firmware updates include protectable expression contained in the registered works.

23.     Solaris and System Firmware updates are available to customers with active support contracts with Oracle to download from Oracle's password-protected, secure customer support website.  The license agreements applicable to any given version of Solaris or System Firmware do not entitle the customer to obtain Solaris or System Firmware updates; rather, a support contract is required to obtain those.  Further, Oracle's technical support policies, which are part of the support contract, provide that a customer may not use Oracle technical support (including downloading or receiving Solaris or System Firmware updates) for hardware that is not covered by the support agreement, i.e., unsupported systems.

24.     Typically, Oracle's technical support service agreements are for annual periods of twelve months.  The customer may renew the agreement for additional twelve-month terms subject to Oracle's then current pricing and support policies.

### B.     Appleby and Olding's Illegal Scheme

25.     Terix advertised itself as "the leading independent provider of flexible and innovative hardware and software maintenance service offerings."  At the heart of Terix's business, however, was Appleby and Olding's unlawful scheme to infringe Oracle's copyrights in Solaris and System Firmware.  Appleby and Olding approved this clandestine plan and instructed Terix employees, including but not limited to Jason Joyce, to implement it.  Appleby and Olding's scheme is documented in, among other places, Terix's June 2013 "Terix Software Support" manual ("the Manual").  The Manual outlined the standard process Terix followed "for Terix customers that require full Software Support," i.e., who needed software updates and not just break fix support.  The Manual stated that once this process is completed, Terix will "provide[] customer access to patching information, firmware and private patches," that is, patches that can only be accessed by customers that have a support agreement with Oracle.  At its

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

7

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

root, the process was for the customer, at Terix's instruction, to put one server on support with Oracle and then obtain access credentials that Terix then used to download Solaris and System Firmware updates for all of the customer's servers on support with Terix (but not on support with Oracle).  This clearly and knowingly violated Oracle's technical support policies.  The Manual contained standardized emails that Terix employees were instructed to send to customers, who were in turn instructed to forward them to Oracle to order support on the one server.  The Manual instructed Terix employees to tell the customer "Please do not copy me on the email," so that Oracle would not be aware that Terix is inducing the customer to commit this misconduct.  The Manual instructed Terix employees to "move[] around" sections of the form customer email "keeping it from looking like a form letter to the OEM."  Pursuant to the Manual, Terix obtained a pre-paid credit card in the customer's name – not Terix's – that was provided to the customer to pay for the support contract with Oracle, again to prevent Oracle from knowing of Terix's involvement.  Because the credit cards Terix procured were all funded in U.S. dollars, the support contracts with Oracle needed to have a U.S. address.  The Manual instructed that for foreign customers with no domestic address, Terix employees were to instruct the customer to submit to Oracle a fraudulent address – one that was either completely "made up" or that belonged to a "random McDonalds."

26.     The Manual also had talking points for Terix employees to use when customers "gr[e]w curious or fearful based on our asking them not use Terix's name, or to do things in a way that hides our involvement."  The Manual acknowledged that Terix's "cloak and dagger" approach could "alarm the customer" who might "be worried about what is right or ethical."

27.     To assuage customer doubt, Appleby and Olding's scheme provided for Terix to falsely tell Oracle hardware customers that they did not need to purchase an annual support agreement with Oracle to obtain Solaris and System Firmware updates.  Instead, at Appleby and Olding's direction, Terix told its customers that it could provide Solaris and System Firmware updates under the false theory that customers' original purchase of the Oracle

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

8

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

hardware, which included a license to use the installed version of Solaris on that hardware, also provided a perpetual entitlement to access and use Solaris and System Firmware updates. In reality, customers that canceled support for Oracle on hardware and contracted with Terix for support on that hardware did not have entitlement to obtain Solaris and System Firmware updates for that hardware. Further, Appleby and Olding knew that the license to use the installed version of Solaris did not convey any rights to Solaris or System Firmware updates.

28. Terix's false representations to customers were documented in, among other places, onboarding documents that Terix referred to as "Clearvision." In general, when Terix induced a customer to end its support contract with Oracle and instead contract for support with Terix and/or one of its partners or resellers, Terix employees had an onboarding phone call with the customer, the content of which largely followed, and was documented in, the Clearvision script. Terix falsely represented to customers that their initial purchase of Oracle hardware and the license to use the version of Solaris that was installed on the hardware gave the customer the right to receive Solaris and System Firmware updates in perpetuity for free. Terix specifically told customers to disregard Oracle's written policies, to which the customers have previously agreed, that a customer may obtain Solaris and System Firmware updates only for servers that are under a support contract with Oracle.

29. Under Appleby and Olding's direction, Terix went to elaborate lengths to conceal its wrongful conduct from Oracle, an effort that ultimately failed. As one example, in a July 14, 2010 email exchange, Olding recommended that Joyce proceed with obtaining the one-to-many customer support contracts, and Appleby similarly instructed Joyce to "[p]roceed with all due haste – HOWEVER – be very, very careful. Put safety (run silent, run deep) over speed." When Appleby said "safety," what he meant, of course, was not being found out by Oracle. Normally, when My Oracle Support ("MOS") users register an access credential, they create a user ID (in the form of an email address) linked to one or more Oracle CSI numbers. Users commonly choose email addresses that contain or reflect the name of their company. Pursuant to Appleby and Olding's direction, however, Terix carefully never employed a user ID that had the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

9

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

word "Terix" in it.  Instead, Terix often obtained Solaris and System Firmware updates with user IDs that reflect the name of Terix's customer, or the name of a Terix affiliate, or an entirely made up name, but never Terix itself.

30.     Appleby and Olding also instructed Terix employees to put the Clearvision documents under the cloak of non-disclosure agreements with Terix's customers even though the only thing Clearvision stated was Terix's unsupportable legal theory that the customer's original purchase of the Sun hardware entitled the customer to free Solaris  and System Firmware updates forever.  Since the customers already had the actual language of the Solaris licenses, the only thing Appleby and Olding could plausibly have been trying to keep secret was their unlawful business model.

31.     Pursuant to Appleby and Olding's instructions, Terix also unlawfully obtained Solaris and System Firmware updates through fraudulent support contracts with Oracle entered into by Terix itself under false pretenses or by other companies under Appleby and Olding's control.  For example, Appleby and Olding caused Terix to commit fraud using the make believe Summit Technology name.  From 2010 forward, Terix entered into annual support contracts with Oracle ostensibly for a single server under the name "Summit Technology Group LLC" to conceal Terix's involvement.  In reality, there is no Summit Technology entity and never was.  Terix went to the added length of calling a non-existent entity an "LLC" in its purchase orders that it submitted to Oracle to falsely convey that Summit Technology was an actual, existing legal entity, when it was not – it was just a d/b/a for Terix itself.  For all of these support contracts, the make believe "Summit Technology" contact was the imaginary employee "Shayne Wallace," who does not exist and never did; that name, too, is taken from a race car driver who Appleby admired.  Joyce testified that he entered into the Summit support contract with Oracle at the direction and under the direct supervision of Bernd Appleby, who called Joyce on the phone, directed him to enter into the contract with Oracle, and stayed on the phone as Joyce completed at least part of the process.  Appleby told Joyce that Oracle would not contract with Terix if Oracle knew Terix was the actual contracting party.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

10

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

32.     This contract was entirely a fraud. Terix entered into it obtain access credentials to MOS – based on the fake name in the contract – which Terix then used to access MOS without authorization to support Terix's own customers, and to download Solaris and System Firmware updates, use them for testing purposes to provide support to Terix's customers, and to provide them to Terix's customers.

33.     Another important aspect of Appleby and Olding's infringing scheme was the abuse of the corporate form, using three entities they owned interchangeably to commit infringement and defraud Oracle. In addition to owning Terix, Appleby and Olding owned Sevanna Financial, Inc. ("Sevanna"), an asset-less shell company. They caused Sevanna to enter into a support contract with Oracle because the name Sevanna would not be recognizable to Oracle as being associated with Terix. They also caused Sevanna to enter into the contract under the name of "Tony Martin," which is completely made up and based on a race car driver's name, not anyone working for Sevanna. Sevanna entered into the support agreement not to support the one server that was ostensibly the subject of the agreement, but as a pretext to gain access credentials to MOS, so Appleby and Olding could traffic them to Terix, which then used them to support its customers by downloading copyrighted materials from Oracle's website. Indeed, Appleby gave Joyce the Sevanna credential and instructed him to use it for these infringing purposes.

34.     In addition, through their ownership of Terix, Appleby and Olding owned and controlled its then-subsidiary West Coast Computer Exchange ("WEX"). Terix performed downloading using a credential that was actually owned by WEX. Appleby and Joyce came up with the fake name "Paul Martin" to use for the WEX access credential, per Appleby's direction that a fake name must be used to avoid detection by Oracle. Appleby then created an email account for Paul Martin, provided it to Joyce, and instructed him to set up with fraudulent support contract with Oracle and use it to download infringing Solaris and System Firmware updates to distribute to customers.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

11

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

35.     Appleby and Olding used Terix, Sevanna and WEX interchangeably to accomplish their infringement and fraud and enrich themselves. The funds for the three companies were all commingled both with each other's and with Appleby and Olding's personal funds. None of the entities was adequately capitalized: Sevanna had no assets of its own, WEX had nearly none, and Appleby and Olding pillaged Terix for their own personal gain to the point that Terix could not satisfy its eventual debt to Oracle.

36.     As Appleby and Olding's scheme progressed, at one point Joyce became so uncomfortable with the infringing business practices that he complained "[t]his cannot in any way be aboveboard and I will not participate in this." Joyce stated, "I am sorry but if worst came to worst I do not want to be part of the ramifications," and "I have to protect my family." Appleby and Olding then had a meeting with Joyce in which they (falsely) assured him that Terix's illegal conduct was permissible and instructed him to continue with it, which he did.

37.     Appleby and Olding knew that the Solaris and System Firmware updates contained Oracle's copyrighted software. They knew that no license or other agreement permitted Terix to download, reproduce and distribute these Solaris and System Firmware updates. Appleby and Olding had the ability to control Terix's employees, and they affirmatively instructed them to commit misconduct that Appleby and Olding knew was copyright infringement.

38.     Appleby and Olding used this copyright infringement to enrich themselves. As co-owners of Terix, they profited directly from the support revenue that Terix obtained from its infringing business model.

39.     Appleby and Olding willfully, intentionally, and knowingly engaged in this wrongful conduct. As a direct and proximate result of these acts, Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits from sales to customers of Oracle support services.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

12

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

### C.     The Terix Lawsuit and the Federal Judgment

40.     In July 2013, Oracle sued Terix, Sevanna, WEX, and other defendants for copyright infringement and related claims.  During that case, Oracle learned that Appleby and Olding were the architects of Terix's infringing business model – that they specifically directed the infringing business model, instructed their employees to implement it, and profited directly from it.

41.     As noted, the evidence of Terix's liability was so overwhelming that in June 2015, Terix settled with Oracle, and on June 15, 2015, Terix (along with Appleby and Olding's other shell companies, Sevanna and WEX) stipulated to a judgment in Oracle's favor on all of Oracle's claims.  The federal judgment included monetary compensation of $57,723,000 and a permanent injunction.  The federal judgment provides for this Court's continuing jurisdiction over "any action" to enforce the judgment.

### D.     The Fraudulent Conveyance

42.     As the Terix litigation neared conclusion and it became clear that Terix's liability would be both enormous and undisputed, Appleby and Olding hatched their backup plan.  In March and April 2015, they created the entities they would later use to effectuate the fraudulent transfer in an attempt to thwart the federal judgment.  Specifically, on March 19, 2015, they incorporated Ermine IP in the State of Delaware.  Appleby is the President, Chief Financial Officer, and Chief Executive Officer of Ermine IP.  Olding is the Secretary of Ermine IP.  On March 19, 2015, they also incorporated TUSA in the State of Delaware.  Appleby is the President, Chief Financial Officer, and Chief Executive Officer of TUSA.  Olding is the Secretary of TUSA.  And on April 2, 2015, they formed Ermine Services in the State of Delaware.  Appleby is the Chief Executive Officer of Ermine Services.  Appleby and Olding own all three entities, and they, like Terix, list 388 Oakmead Parkway, Sunnyvale, CA 94085 as their corporate address.

43.     Following entry of the federal judgment, Terix defaulted on the terms of its settlement with Oracle and has paid Oracle only $300,000, leaving an outstanding judgment of $57,423,000, plus post-judgment interest.  Rather than have Terix pay what it owes Oracle,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

13

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

Appleby and Olding conspired to transfer all of Terix's assets[2] to TUSA, Ermine IP and Ermine Services, which then continued doing business under the name "Terix," in a brazen fraudulent transfer to try to thwart the federal judgment.

44.     Specifically, on February 17, 2016, Terix assigned all of its assets (other than facility lease arrangements) to Terix LLC (the "Assignment"), for no financial compensation in return, leaving Terix an empty shell.  The transferred assets were worth millions of dollars.  On the same day Terix LLC transferred all of those assets to TUSA, Ermine IP and Ermine Services under an Asset Purchase Agreement (the "APA") for essentially nothing in return.  Since that time, TUSA, Ermine IP and Ermine Services – all owned and controlled by Appleby and Olding, just as Terix was – have used these valuable asserts to continue to doing business, and earning profit and paying profits to Appleby and Olding, under the name "Terix."  In fact, TUSA, Ermine IP and Ermine Services represent to the world that they *are* Terix.  They continue to run Terix's website, www.terix.com, which continues to describe the entity providing support services as "Terix" and makes no mention of TUSA, Ermine IP and Ermine Services.  TUSA, Ermine IP and Ermine Services continue to market themselves to potential customers as "Terix" when offering to provide support for the customers' Oracle Sun-branded hardware.

45.     The Assignment was purportedly structured as an "assignment for the benefit of creditors" (an "ABC"), but it is a sham.  In a true ABC, the assignor transfers all of its non-exempt assets to an assignee, which then sells or otherwise disposes of them to maximize value for the assignor's creditors, and it pays the creditors ratably the value it receives.  Here, the Assignment was designed for the sole purpose of thwarting the federal judgment in order to stiff Oracle, which was by far Terix's largest creditor.  Rather than maximize any value of Terix's assigned assets for the benefit of Terix's creditors, including Oracle, Terix LLC simply transferred them to TUSA, Ermine IP and Ermine Services for essentially nothing.  The whole point of this fraudulent conveyance was to leave the enormous liability of the federal judgment with Terix while transferring Terix's assets to other entities owned by Appleby and Olding, so

---

[2] As noted, Sevanna never had assets separate from Terix's, and by this time WEX did not either.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

14

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

that "Terix" (the business) could effectively continue in operation rid of its federal judgment liability.  The fraudulent nature of the transfer is confirmed by the fact that Appleby and Olding are on both sides of the transaction:  they own Terix, the "selling" entity subject to the federal judgment and divesting itself of its assets, and they own the "buying" entities (TUSA, Ermine IP and Ermine Services).  Further, the sale was effectively for nothing, despite the fact that valuable assets were transferred.  Appleby and Olding used Terix LLC as a middleman to create the appearance of an ABC, but that was a meaningless fraud.  The fact that the Assignment and the APA occurred on the same day confirms that this was a pre-packaged scam to transfer assets away from the judgment debtor to other entities owned by Appleby and Olding.

46.     Defendants' wrongful conduct harmed Oracle by depriving Terix of its assets so that it would have no further funds with which to make any further payments on the federal judgment to Oracle.  All of the assets that TUSA, Ermine IP and Ermine Services received under the APA or otherwise directly or indirectly from Terix are ill-gotten gains that should be returned to Terix so that Terix may use them to pay some or all of the federal judgment.

### First Claim for Relief

### (Against Appleby and Olding)

### Copyright Infringement – Vicarious and Contributory Liability

47.     Oracle incorporates each of the allegations in preceding paragraphs 1 through 46 of this Complaint as though fully set forth here.

48.     Oracle owns valid and enforceable copyrights in all of its software and support materials, including the Solaris operating system and System Firmware, which are creative works of original authorship.  Oracle has Certificates of Registration that cover many of the Solaris and System Firmware updates taken and copied by Terix.  Solaris and System Firmware updates include protectable expression contained in the registered works.

49.     Oracle holds all of Sun's interest, rights, and title to the copyrights for Solaris 8, 9, and 10, and all interest, rights and title to the copyright for Solaris 11.  Oracle holds all interest, rights, and title to the copyrights for Oracle System Firmware.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

15

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

50.     Oracle owned one or more exclusive rights in certain copyrights at issue in this case, including but not limited to the works listed in paragraph 51, at a point in time during which Terix infringed those exclusive rights.

51.     Terix infringed copyrights in Oracle software, including the software covered by the certificates of registration identified, dated, and numbered as follows:

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Solaris 8 (SPARC Platform Edition) | June 19, 2000 | TX 5-138-319 |
| Solaris 8 (Intel Platform Edition) | June 19, 2000 | TX 5-196-384 |
| Solaris 9 operating system | August 7, 2002 | TX 5-586-147 |
| Solaris 10 operating system | April 19, 2005 | TX 6-086-753 |
| Solaris 11 operating system | December 18, 2014 | TX 8-021-394 |
| Oracle System Firmware 6.7.10 | June 19, 2014 | TX 7-851-653 |
| Oracle System Firmware 7.3.0.a | June 19, 2014 | TX 7-851-666 |
| Oracle System Firmware 8.0.0.e | June 19, 2014 | TX 7-851-615 |
| Oracle System Firmware 8.0.4.b | June 19, 2014 | TX 7-851-695 |
| Oracle System Firmware 8.1.4.h | June 19, 2014 | TX 7-851-710 |
| Oracle System Firmware 9.0.0.d | June 19, 2014 | TX 7-851-699 |
| Oracle System Firmware 9.0.1.f | June 19, 2014 | TX 7-851-513 |
| Oracle System Firmware 9.0.0.i | June 19, 2014 | TX 7-851-509 |
| Oracle System Firmware 9.1.0.i | June 19, 2014 | TX 7-851-514 |

52.     These registrations generally cover versions of Oracle's Solaris operating system, including the Solaris Updates thereto, as well as versions of Oracle System Firmware, including System Firmware updates.  Terix copied and distributed Solaris and System Firmware updates, without a license.

53.     Through the acts alleged above, Terix violated Oracle's exclusive rights to reproduce and make copies of its copyrighted software, including materials covered by the registrations listed above by, among other things, downloading, copying and distributing Oracle's copyrighted software onto its and its customers' computers in violation of 17 U.S.C. § 106.

54.     Terix was not authorized to copy, download, reproduce, create derivative works from, or distribute Oracle's copyrighted software except as authorized by and in support of a specifically licensed use, and with respect only to software for which it had a current right to have and use.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

16

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

55.     Appleby and Olding contributorily and vicariously infringed Oracle's exclusive rights in the software by controlling, directing, intentionally encouraging, inducing, and materially contributing to Terix's copying, distribution, and/or creation of derivative works from Oracle's copyrighted software.  Appleby and Olding obtained a direct financial benefit from the above infringing activities while declining to exercise their right to stop it or limit it.

56.     Appleby and Olding knew or should have known that Terix's copying, distributing, and creating derivative works of and from Oracle's software, which Terix had no license to copy, distribute, or create derivative works from, infringed Oracle's exclusive rights in that software.

57.     Oracle is entitled to damages from Appleby and Olding in an amount to be proven at trial, including profits attributable to the infringement not taken into account in computing actual damages under 17 U.S.C. § 504(b).  Oracle is also entitled to statutory damages under 17 U.S.C. § 504(c).

### Second Claim for Relief

### (Appleby and Olding)

### Alter Ego Liability

58.     Oracle incorporates each of the allegations in preceding paragraphs 1 through 57 of this Complaint as though fully set forth here.

59.     Appleby and Olding own all of Terix and Sevanna's stock, and during the relevant time period they owned and controlled WEX through their ownership of Terix.  They were the officers and decision-makers of all three companies.  They used all three entities as a shell for a single venture to infringe Oracle's copyrights and defraud Oracle.

60.     Terix, Sevanna and WEX were inadequately capitalized.  Sevanna had literally no assets of its own; any money spent on its behalf was from Appleby and Olding's personal funds.  WEX was nearly asset-less.  Appleby and Olding diverted Terix's corporate funds to their own personal use and benefit.  Appleby and Olding commingled Terix's, WEX's and Sevanna's funds with their own personal funds.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB3/ 200840742.3

17

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

61.    Terix, Sevanna and WEX failed to adhere to corporate formalities by failing to keep accurate detailed records and minutes of decisions and to hold corporate board meetings.

62.    Because Appleby and Olding have taken advantage of the corporate form to enrich and shield themselves at the expense of Oracle, it would promote injustice and fraud upon Oracle to observe the corporate form as to Terix, Sevanna and WEX.  Appleby and Olding are Terix's, Sevanna's and WEX's alter egos and the corporate entities should be disregarded. Appleby and Olding are personally liable for the judgment entered against Terix, Sevanna and WEX in *Oracle America, Inc., et al. v. Terix Computer Company, Inc*., et al., Case No. 5:13-cv-03385 PSG.  They are also liable for funds they improperly diverted to themselves from the entities for which they are alter egos.

### Third Claim for Relief

### (All Defendants)

### Fraudulent Transfer - Cal. Civil Code § 3439, *et seq*.

63.    Oracle incorporates each of the allegations in the preceding paragraphs 1 through 62 of this Complaint as though fully set forth here.

64.    Oracle is a creditor, and Terix is a debtor, within the meaning of Section 3439.01 of the California Civil Code because a substantial amount of the federal judgment owed by Terix to Oracle remains unpaid.

65.    Terix is unable to satisfy its obligations to Oracle in part because of the transfers of its assets to TUSA, Ermine IP and Ermine Services (the "Transferees"), as described above.  The transfers to Transferees constitute transfers of Terix's property within the meaning of Section 3439.01 of the California Civil Code.  These transfers were done for the benefit of Appleby and Olding, who as the Transferees' owners are the direct beneficiaries of and have profited from the transfers.

66.    The result of these transfers is Terix's inability to pay Oracle:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

A.     Defendants knew that this transfer of assets would make it impossible for Terix to satisfy its obligations to Oracle. Nevertheless, under Appleby and Olding's direction, Defendants proceeded with the transfers described above with the purpose of Transferees' retaining the assets by putting them out of the reach of Oracle. The transfers thus were intended specifically to hinder, delay, or defraud Oracle.

B.     When Terix transferred its assets to Transferees for less than a reasonably equivalent value, it was engaged, or was about to engage, in a business or a transaction for which Terix's remaining assets were unreasonably small in relation to the business or transaction. Specifically, Terix effectuated the transfer at around the same time that it committed incurable default on its settlement with Oracle, and Terix's remaining assets (essentially nothing) were unreasonably small in relation to the $57,423,000, plus post-judgment interest, then outstanding on the federal judgment.

C.     Similarly, when Terix transferred its assets to Transferees for less than a reasonably equivalent value, Terix intended to incur, believed it would incur, or reasonably should have believed that it would incur debts far beyond its ability to pay as those debts became due. Specifically, Terix effectuated the transfer at around the same time that it committed incurable default on its settlement with Oracle, and the $57,423,000, plus post-judgment interest, then outstanding on the federal judgment was far beyond Terix's ability to pay, which became non-existent as a result of the transfer.

D.     When Terix transferred its assets to Transferees for less than a reasonably equivalent value, it was insolvent within the meaning of 3439.02(a) of the California Civil Code, or it became so as a result of the transfer. Oracle was a creditor whose claim arose before the transfer was made, and as a result the transfer was fraudulent.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

19

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

67.     The fraudulent transfer of assets by Terix to Transferees has damaged Oracle by making it impossible for Terix to satisfy its obligations.  Oracle is entitled to judgment against the debtor (Terix); the subsequent transferees (the Transferees), which took the assets for no value and in bad faith; and against Appleby and Olding, the people for whose benefit the transfer was made.  Oracle is entitled to an avoidance of the asset transfer, an attachment or other provisional remedy against the assets transferred or their proceeds, an injunction against further disposition of the assets or their proceeds, appointment of a receiver to take charge of the assets transferred or their proceeds, the value of the assets transferred, and any other relief the circumstances may require.

### PRAYER FOR RELIEF

WHEREFORE, Oracle respectfully prays for the following:

A.     For damages against Appleby and Olding to be proven at trial;

B.     For statutory damages against Appleby and Olding pursuant to 17 U.S.C. § 504;

C.     For an Order awarding Oracle its attorneys' fees and costs;

D.     For an Order declaring Appleby and Olding liable for the judgment entered against Terix, Sevanna and WEX in *Oracle America, Inc., et al. v. Terix Computer Company, Inc.*, et al., Case No. 5:13-cv-03385 PSG.

E.     For an Order voiding the transfer of Terix's assets to Transferees;

F.     For an Order creating an attachment against the assets transferred to Transferees or their proceeds;

G.     For an appointment of a receiver to take charge of the assets transferred or their proceeds;

H.     For a preliminary and permanent injunction restraining Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them from further disposition of the assets or their proceeds;

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

20

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      For damages for the value of the Terix assets that were transferred to Transferees;

J.      For prejudgment interest; and

K.      For an Order awarding Oracle such other and further relief as the Court deems just and proper.

Dated: April 20, 2016                                MORGAN, LEWIS & BOCKIUS LLP
                                                    Thomas S. Hixson
                                                    Spencer H. Wan


                                                    By:      /s/ Thomas S. Hixson
                                                        Thomas S. Hixson
                                                        Attorneys for Plaintiffs
                                                        Oracle America, Inc. and Oracle
                                                        International Corporation

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

21

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

1

## DEMAND FOR JURY TRIAL

2

Pursuant to Fed. R. Civ. Proc. 38(b), Plaintiffs Oracle America, Inc., and Oracle

3

International Corporation demand a trial by jury on all issues so triable.

4

5    Dated: April 20, 2016                    MORGAN, LEWIS & BOCKIUS LLP
                                              Thomas S. Hixson
6                                             Spencer H. Wan

7

8                                             By:  ____/s/ Thomas S. Hixson_____

9                                                  Thomas S. Hixson
                                                   Attorneys for Plaintiffs
10                                                 Oracle America, Inc. and Oracle
                                                   International Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB3/ 200840742.3

22

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF