1

2

3

4                               UNITED STATES DISTRICT COURT

5                              NORTHERN DISTRICT OF CALIFORNIA

6

7    ORACLE AMERICA, INC., et al.,              Case No. 16-cv-02090-JST

             Plaintiffs,
8

9         v.                                    **ORDER DENYING MOTIONS TO DISMISS**

10   BERND APPLEBY, et al.,                     Re: ECF Nos. 57, 58

             Defendants.
11

12          Before the Court are Defendant Bernard Appleby, James Olding, TUSA, Inc. ("TUSA"),

13   Ermine IP, Inc. ("Ermine IP"), and Ermine Services, LLC's ("Ermine Services") Motion to

14   Dismiss Oracle America, Inc's ("Oracle") First Amended Complaint, ECF No. 58, as well as

15   Defendant Terix Computer Company, Inc.'s ("Terix") Motion to Dismiss Oracle's First Amended

16   Complaint, ECF No. 57.  The Court will deny both motions.

17   I.      **BACKGROUND**

18           A.  **Terix I**

19           In a previous litigation, Oracle sued Terix for copyright infringement.  See Oracle

20   America, Inc. v. Terix Computer Company, Inc., No. 13-cv-3385 (N.D. Cal.) (filed July 19, 2013)

21   ("Terix I").  Among other things, Oracle alleged that:

22                   Terix . . . ha[s] engaged in a deliberate scheme to misappropriate
                     and distribute copyrighted, proprietary Oracle software code.
23                   [Terix] ha[s] employed front companies (defendants Sevanna and
                     WEX) and made up fake people . . . to contract with Oracle using
24                   fictitious email addresses, all so they can illegally download
                     Oracle's software and use it to steal Oracle's customers. Through
25                   false representations to their customers who are also current or
                     former Oracle customers, Terix . . . ha[s] taken or facilitated the
26                   taking of large quantities of software patches, updates and bug fixes
                     for Oracle's proprietary Solaris operating system, and other
27                   technical support files used on Oracle's Sun-branded computers
                     (collectively, "Solaris Updates").  Terix . . . falsely . . . told
28                   unwitting end users that they are authorized to access and distribute

United States District Court
Northern District of California

United States District Court
Northern District of California

> Solaris Updates to the end users and/or that the end users are entitled to perpetual support on the Solaris operating system, including to receive Solaris Updates, based on their original purchase of the hardware on which the operating system was installed.  To the contrary, Oracle, and Sun before it, have long required customers to purchase an annual support agreement from them to receive that support.

Id. at ECF No. 248 ¶ 1 (Second Amended Complaint).  On June 10, 2015, Oracle and Terix stipulated to a Judgment, providing that Oracle recover $57,723,000 from Terix.  Id. at ECF No. 652.

## B.  The Instant Action

On April 20, 2016, Oracle filed a Complaint against Bernard Appleby, James Olding, Terix, TUSA, Ermine IP, and Ermine Services.  Oracle America, Inc. v. Bernard Appleby, No. 16-cv-2090-JST, ECF No. 1 (N.D. Cal.).[1]  Bernard Appleby is the President of Terix.  Id. ¶ 10.  James Olding is the Chief Operating Officer of Terix.  Id. ¶ 11.  TUSA, Ermine IP, and Ermine Services are companies owned or co-owned by Appleby and Olding to which Oracle alleges Appleby and Olding "fraudulently transferred all of Terix's assets."  Id. ¶ 8.  The Complaint asserts claims for (1) vicarious and contributory copyright infringement against Appleby and Olding; (2) alter ego liability against Appleby and Olding; and (3) fraudulent transfer against all Defendants.  On June 30, 2016, Oracle filed its First Amended Complaint ("FAC"), asserting the same claims.  ECF No. 42.

According to the allegations in the FAC, Appleby and Olding "knowingly misrepresented to Oracle that Terix could satisfy a portion of the [$57,723,000] judgment [in Terix I] and, on that basis, Oracle agreed to a settlement with Terix that allowed it to pay a reduced amount of the judgment over several years."  Id. ¶ 44.  "Terix made the initial payment of $300,000 . . . , but has since defaulted on the terms of its settlement with Oracle, leaving an outstanding judgment of $57,423,000."  Id.  "Rather than have Terix pay what it owes Oracle, though, Appleby and Olding . . . conspire[d] to transfer all of Terix's assets to TUSA, Ermine IP and Ermine Services, which then continued doing business under the name 'Terix,' in a brazen fraudulent transfer to try to

---

[1] Unless stated otherwise, all ECF citations refer to the docket in Oracle America, Inc. v. Bernard Appleby, No. 16-cv-2090-JST (N.D. Cal.) (filed April 20, 2016).

2

1   thwart the federal judgment [in <u>Terix I</u>]." <u>Id.</u>

2       "The transaction transferred all of Terix's assets . . . to the transferees" and "transferred

3   debts of $3,041,024.08 that Terix owed to 128 of its vendors to TUSA." <u>Id.</u> ¶¶ 49–50.  However,

4   "the transaction did not transfer Terix's debt to Oracle, and as a result of the assignment Terix had

5   zero assets left to pay any part of its debt to Oracle [resulting from the judgment in <u>Terix I</u>]." <u>Id.</u>

6   50.  The FAC further alleges that "[t]he value of the assets transferred to the transferees

7   substantially exceeds the value of Terix's liabilities that the transferees assumed." <u>Id.</u> ¶ 51.  While

8   "[v]aluation documents from shortly before the transaction show[ed] that Terix had assets of $14.8

9   million[,] . . . [the transfer document] states that the transferees assumed liabilities of $7.75

10  million." <u>Id.</u>  According to Oracle, "[t]he whole point of this transaction was to leave the

11  enormous liability of the federal judgment with Terix while transferring Terix's assets to other

12  entities owned by Appleby and Olding, so that 'Terix' (the business) could effectively continue in

13  operation rid of its federal judgment liability." <u>Id.</u> ¶ 52.  Oracle further asserts that "[t]he

14  fraudulent nature of the transfer is confirmed by the fact that Appleby and Olding are on both

15  sides of the transaction: they own Terix, the 'selling' entity subject to the federal judgment and

16  divesting itself of its assets, and they own the 'buying' entities (TUSA, Ermine IP and Ermine

17  Services)." <u>Id.</u>

18      On July 28, 2016, Terix filed a Motion to Dismiss the FAC.  ECF No. 57.  That same day,

19  Appleby, Olding, TUSA, Ermine IP, and Ermine Services filed a Motion to Dismiss the FAC.

20  ECF No. 58.  The Court held a hearing on September 1, 2016 and is now prepared to issue its

21  ruling.

22  **II.      LEGAL STANDARD**

23      A complaint must contain "a short and plain statement of the claim showing that the

24  pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and

25  the ground upon which it rests." Fed. R. Civ. P. 8(a)(2); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

26  544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual

27  matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>,

28  556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility

United States District Court
Northern District of California

3

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

"Ordinarily, the defense of res judicata, like other affirmative defenses, cannot be raised by a motion to dismiss under Rule 12(b)(6)." Barra v. City of Kerman, No. 08-cv-01909-OWWGSA, 2009 WL 1706451, at *3 (E.D. Cal. June 9, 2009) (citing Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir.1994)). "However, when, as here, the defense does not raise disputed issues of fact, res judicata can be asserted in a motion to dismiss." Id. (citing Intri–Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048 (9th Cir. 2007)).

"Because a claim for actual fraudulent transfer involves an allegation of fraud or mistake, it is subject to Federal Rule of Civil Procedure 9(b), which requires a party to 'state with particularity the circumstances constituting fraud or mistake' and is applied by a federal court to both federal law and state law claims." Kelleher v. Kelleher, No. 13-CV-05450-MEJ, 2014 WL 94197, at *5 (N.D. Cal. Jan. 9, 2014). "Thus, Plaintiff's Complaint must plead with particularity the circumstances surrounding the fraud or mistake." Id. (citing Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009)).

## III.    ANALYSIS

The Court first considers Defendants Appleby and Olding's assertion that Oracle's vicarious copyright infringement claim is precluded by the doctrine of res judicata (claim preclusion). ECF No. 58 at 5–10. Second, the Court addresses Appleby and Olding's argument that Oracle's alter ego claim fails to state a claim. Id. at 10–15. Finally, the Court analyzes the arguments raised by each of the Defendants regarding Oracle's fraudulent transfer claim. Id. at 15–25; ECF No. 57.

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**A.  Claim Preclusion Does Not Bar Oracle's Vicarious Copyright Infringement Claim**

Defendants Appleby and Olding (collectively, "the individual Defendants") argue that Oracle's vicarious copyright infringement claim against them is barred under the doctrine of claim preclusion because "Oracle's copyright infringement claim is identical to its copyright infringement claim in [Terix I]," which was resolved on the merits by way of a stipulated final judgment.  ECF No. 58 at 13–14.  Generally speaking, "[c]laim preclusion, or res judicata, applies where: (1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits."  Cent. Delta Water Agency v. United States, 306 F.3d 938, 952 (9th Cir. 2002) (citing Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313, 323–24 (1971)).  The individual Defendants argue that claim preclusion applies here because "Appleby and Olding were in privity with Terix Inc. in [Terix I]." Id. at 14.  The Court, however, need not resolve whether Appleby and Olding were in privity with Terix Inc. because, even assuming privity exists, the Court concludes that claim preclusion does not apply.

"When considering the preclusive effect of a federal court judgment, [courts] apply the federal law of claim preclusion."  First Pac. Bancorp, Inc. v. Helfer, 224 F.3d 1117, 1128 (9th Cir. 2000).  Applying the federal law of claim preclusion, Ninth Circuit authority supports the proposition that "a judgment in favor of the injured party in a vicarious liability relationship does not preclude a second action against nonparties except as to the amount of damages."  M.J. ex rel. Beebe v. United States, 721 F.3d 1079, 1083 n.4 (9th Cir. 2013) (quoting Gonzales v. Hernandez, 175 F.3d 1202, 2017 (10th Cir. 1999)).  Applying that rule here, because the judgment in Terix I was a judgment in favor of Oracle, the injured party, Oracle is not precluded from bringing a second action against nonparties who are in a vicarious liability relationship with Terix, including the individual Defendants, "except as to the amount of damages."  Id.; see also Headley v. Bacon, 828 F.2d 1272, 1278 (8th Cir. 1987) ("[A] judgment *against* an injured party which bars him from reasserting his or her claim against that defendant generally also extinguishes any claim he or she has against another person in a vicarious liability relationship with the first defendant, but . . . a judgment in *favor* of the injured person is conclusive only as to the amount of damages unless . . .

5

1  different rules govern the measure of damages in the two actions.") (emphasis in original).

2  In <u>Beebe</u>, a plaintiff filed an action against a police officer and the city of Quinhagak,

3  Alaska ("the City"), seeking damages sustained as a result of the police officer's allegedly

4  negligent driving of a four-wheeler.  721 F.3d at 1082.  The plaintiff sought to hold the City liable

5  based, in part, on a theory of vicarious liability.  <u>Id.</u>  The district court granted summary judgment

6  to the City, concluding that "the City was not vicariously liable to Plaintiff[], because it did not

7  owe a non-delegable duty to provide police services."  <u>Id.</u> at 1083.  After the plaintiff appealed,

8  the United States, on behalf of the police officer,[2] made an offer of judgment to the plaintiff under

9  Federal Rule of Civil Procedure 68, which offer the plaintiff accepted.  <u>Id.</u>

10  The plaintiff then appealed the district court's order granting the City summary judgment.

11  <u>Id.</u>  The City argued, among other things, that the plaintiff's "acceptance of the United States' . . .

12  Rule 68 offer moots her appeal under res judicata principles."  <u>Id.</u> at 1083 n.4.  The Ninth Circuit

13  rejected this argument, stating that even "[a]ssuming that the district court's judgment based on

14  the United States' offer of judgment was a *final* judgment for res judicata purposes, . . . res

15  judicata does not preclude [the plaintiff] from pursuing an additional judgment against the

16  City . . . ."  <u>Id.</u> (emphasis in original).  To support this holding, the Ninth Circuit cited a Tenth

17  Circuit case, <u>Gonzalez v. Hernandez</u>, 175 F.3d 1202, 1207 (10th Cir. 1999) for the proposition that

18  "Courts applying section 51(2) [of the Restatement (Second) of Judgments] have held that a

19  judgment in favor of the injured party in a vicarious liability relationship does not preclude a

20  second action against nonparties except as to the amount of damages."  <u>Beebe</u>, 721 F.3d at 1083

21  n.4.

22  <u>Beebe</u> is not entirely on point because that case involved an attempt to raise a claim

23  preclusion defense resulting from a prior judgment within the same action, whereas this case

24  involves two separate actions.  Nonetheless, <u>Beebe</u>'s approval of <u>Gonzales</u> for the proposition

25

26  _____

27  [2] "[T]he United States substituted itself for [the police officer] under the Westfall Act, 28 U.S.C. §
2679(d)" because "the United States Attorney for the District of Alaska 'certified' that [the police
officer] was deemed to be a *federal* employee for the purposes of [the] lawsuit, [as] he was
28  providing services under an [agreement with the Native Village of Kwinhagak, a federally-
recognized American Indian tribe]."  <u>Beebe</u>, 721 F.3d at 1082.

1   quoted above is highly persuasive.  Moreover, <u>Gonzalez</u> is directly on point and supports Oracle's

2   argument that claim preclusion does not apply here.

3          In <u>Gonzalez</u>, a hospital employee sued the hospital in state court for employment

4   discrimination on the basis of national origin.  175 F.3d at 1204.  The jury "returned a verdict

5   finding that [the hospital] did not discriminate but did retaliate against" the plaintiff, awarding her

6   $170,000 in compensatory damages.  <u>Id.</u>  In a separate action, which was stayed pending the state

7   court action, plaintiff sued certain other hospital employees in federal court, "[d]escribing the

8   same acts and occurrences as alleged in the state court suit."  <u>Id.</u>  After the jury trial in the state

9   court action, the defendant hospital employees in the federal action moved for summary judgment.

10  <u>Id.</u>  The district court granted the defendant hospital employees' motion, finding that the federal

11  claims were barred by, among other things, res judicata.  <u>Id.</u>

12         On appeal, the Tenth Circuit applying New Mexico claim preclusion law, which adopted

13  the Restatement (Second) of Judgments, found that the district court erred in holding that

14  plaintiff's *successful*[3] retaliation claim against the hospital in state court barred her claim against

15  the defendant hospital employees in federal court.  <u>Id.</u> at 1206–08.  In so holding, the Tenth

16  Circuit relied on Section 51(2) of the Restatement (Second) of Judgments, which provides: "A

17  judgment *in favor* of the injured person is conclusive upon him *as to the amount of his damages*,

18  unless [certain exceptions apply]."  <u>Id.</u> at 1207 (emphasis in <u>Gonzales</u>).  The Tenth Circuit noted

19  that "[c]ourts applying section 51(2) have held that a judgment in favor of the injured party in a

20  vicarious liability relationship does not preclude a second action against nonparties except as to

21  the amount of damages."  <u>Id.</u> (citing, among other decisions, <u>Headly</u>, 828 F.2d at 1278).  The

22  <u>Gonzales</u> court stated that "[t]he Restatement clearly contemplates a complainant proceeding in

23  split actions against a vicariously responsible obligor and the primary obligaor."  <u>Id.</u>  The

24  <u>Gonzales</u> court also noted that the Restatement offered "a hypothetical directly on point":

25          P is injured as a result of the deliberate act of S, who is M's
            employee.  P brings an action against M, the applicable law limiting
26          his recovery to compensatory damages.  P obtains judgment for

27  _____

28  [3] By contrast, the Tenth Circuit affirmed the district court's decision finding that plaintiff's
    unsuccessful discrimination claim was barred by claim preclusion.  <u>Gonzales</u>, 175 F.3d at 1206.

United States District Court
Northern District of California

$10,000. In a subsequent action against S, P may obtain judgment for no more than $10,000 in compensatory damages but is not precluded from recovering punitive damages.

Id. (quoting Restatement (Second) of Judgments § 51, illustration 7).

"Applying the principles in the Restatement," the Tenth Circuit held that the plaintiff was "not barred from suing the employee defendants for retaliation, but she [was] precluded under section 51(2) from seeking more than [the amount she had previously been awarded in compensatory damages]." Id. The Court finds that Gonzales, and section 51(2) of the Restatement (Second) of Judgments, persuasive. Because the Ninth Circuit approvingly cited Gonzales's holding in Beebe, the Court applies it here and concludes that Oracle is not barred from suing the individual defendants for vicarious copyright infringement, but is precluded from seeking more than the $57,723,000, previously awarded to Oracle in Terix I.[4]

**B. Oracle States a Claim for Alter Ego Liability**

Oracle's second claim seeks to hold the individual Defendants "personally liable for the judgment entered against Terix, Sevanna and WEX" in Terix I based on alter ego liability. "Under California law, alter ego liability may be imposed where (1) 'there is such a unity of interest and ownership that the individuality, or separateness, of the [defendant] and corporation has ceased;' and (2) 'the facts are such that an adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice.'" Whitney v. Arntz, 320 F. App'x 799, 800 (9th Cir. 2009) (memorandum disposition) (quoting Wood v. Elling Corp., 20 Cal. 3d 353, 365 (1977)). The individual Defendants argue that "Oracle ha[s] failed to plead facts establishing both the unity of interest and the inequitable result requirements of the alter ego doctrine." ECF No. 58 at 11. The Court disagrees.

---

[4] The Court is aware of contrary Second Circuit authority. See Burberry Ltd. v. Horowitz, 534 Fed. Appx. 41, 43 (2013) ("Claim preclusion also bars a plaintiff who *prevails* in an earlier action from bringing new claims, based on the facts of the first action, against the same defendant or those in privity with the defendant.") (emphasis in original) (citing Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367–68 (2d Cir. 1995)). However, Burberry did not involve a claim, as here, involving vicarious liability. As a result, section 51(2) of the Restatement (Second) of Judgments was not implicated in Burberry. See Restatement (Second) of Judgments § 51 (entitled "Persons having a relationship in which one is *vicariously* responsible for the conduct of the other.") (emphasis added). Moreover, confronted by authority from the Tenth and Second Circuits pulling in different directions, the Court concludes that it ought to follow the Tenth Circuit authority, which was relied upon by the Ninth Circuit in Beebe.

8

### 1.  Unity of Interest

California courts consider a variety of factors in assessing the "unity of interest" requirement, including:

> [c]ommingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses . . . ; the treatment by an individual of the assets of the corporation as his own . . . ; [. . .] the holding out by an individual that he is personally liable for the debts of the corporation . . .; the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities . . . ; the identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management; sole ownership of all of the stock in a corporation by one individual or the members of a family . . . ; [. . . ] the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization . . . ; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation . . . ; [. . .] the use of the corporate entity to procure labor, services or merchandise for another person or entity . . . ; the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another . . . .

Zoran Corp. v. Chen, 185 Cal. App. 4th 799, 811–12 (2010) (bracketed ellipses added).  "No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine."  Id. at 812.

Contrary to the individual Defendants assertion that "Oracle alleges no specific facts to support these factors," ECF No. 58 at 18, the FAC is replete with specific factual allegations regarding several of the Zoran factors.  For instance, the FAC alleges that "in 2014 Appleby and Olding paid themselves nearly a million dollars in owners' draws, in a year in which [Terix's] net income was almost negative three million dollars and in which a sizeable federal judgment was clearly approaching."[5]  ECF No. 42 ¶ 71.  "Similarly, in 2012 and 2013, [Appleby and Olding]'s

---

[5] The individual Defendants argue that "Oracle's allegation that Terix Inc. distributed funds to Appleby and Olding in a year in which Terix Inc. had negative income . . . does not establish a purported diversion of corporate funds" because "[t]he alleged distribution could have been in furtherance of a corporate purpose and Oracle does not allege otherwise."  ECF No. 58 at 18 n.2.  The Court rejects this argument because, in the Ninth Circuit , "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are

United States District Court
Northern District of California

1    draws exceeded the preceding year's entire net income."  Id.

2         The FAC also alleges that "Terix, Sevanna and WEX . . . failed to adhere to corporate

3    formalities by failing to keep accurate detailed records and minutes of decisions and to hold

4    corporate board meetings."  Id. ¶ 75.  Additionally, the FAC alleges that one of the entities owned

5    by Appleby and Olding, which was a party to the stipulated judgment in Terix I, Sevanna, "had

6    literally no assets of its own," while another such entity, WEX, "was nearly asset-less."  Id. ¶ 73.

7    Finally, the FAC alleges that "Appleby and Olding caused Sevanna [and WEX] to enter into a

8    support contract with Oracle under a false name . . . ostensibly for support on a single server," but

9    then "trafficked" the access credentials to Terix "who then used them to commit copyright

10   infringement that brought revenue to Terix that Appleby and Olding then siphoned off to

11   themselves personally."  Id. ¶ 69.  Appleby and Olding "used Sevanna and WEX to enter into

12   [these] support contracts with Oracle because those names would not create suspicion with

13   Oracle."  Id. ¶ 72.  Appleby and Olding even "used their personal funds to pay for those Sevanna

14   and WEX support contracts."  Id.  These specific factual allegations are more than sufficient to

15   survive a Rule 12(b)(6) motion.

16                    **2.   Promotion of Injustice**

17        Oracle argues that it has pleaded the second factor needed to sustain an alter ego claim

18   because "Appleby and Olding's actions have made it impossible for Oracle to recover against

19   Terix, WEX and Sevanna and to collect on its valid judgment."  ECF No. 66 ay 24.  The parties

20   disagree on whether such allegations alone are sufficient to plead an alter ego claim.  Oracle

21   asserts that an inability to collect a judgment alone is sufficient.  ECF No. 66 at 24 (citing

22   Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership, 222 Cal. App. 4th 811, 813

23   (2013) (Plaintiff "cannot collect its judgment because Airborne is insolvent.  Under the

24

25   plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  Starr v. Baca,
     652 F.3d 1202, 1216 (9th Cir. 2011).  "Plaintiff's complaint may be dismissed only when
26   defendant's plausible alternative explanation is so convincing that plaintiff's explanation is
     *im*plausible."  Id.  Here, Oracle's plausible explanation (that the funds were misappropriated by
27   Appleby and Olding) is not rendered implausible by the individual Defendants assertion that "[t]he
     alleged distribution could have been in furtherance of a corporate purpose."  ECF No. 58 at 18 n.2.
28

United States District Court
Northern District of California

circumstances here, this is an inequitable result as a matter of law.").  The individual Defendants

counter that "[t]he potential difficulty a plaintiff faces collecting a judgment is not an inequitable

result that warrants application of the alter ego doctrine."  ECF No. 58 at 18 (citing Neilson v.

Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003) ("California courts have

rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an

inequitable result that warrants application of the alter ego doctrine.").

The Court need not determine whether the difficulty a plaintiff has in collecting a judgment

alone is sufficient to satisfy the second element of an alter ego claim because the individual

Defendants' own authority provides that in addition to an allegation of an inability to collect a

judgment, "California courts generally require some evidence of bad faith conduct on the part of

defendants before concluding that an inequitable result justifies an alter ego finding."  Neilson,

290 F. Supp. 2d at 1117.  Here, the FAC is awash with allegations of bad faith by the individual

Defendants.  See, e.g., ECF No. 42 ¶ 44 (Appleby and Olding "knowingly misrepresented to

Oracle that Terix could satisfy a portion of the judgment and, on that basis, Oracle agreed to a

settlement with Terix that allowed it to pay a reduced amount of the judgment over several

years . . . .  Rather than have Terix pay what it owes Oracle, though, Appleby and Olding used this

additional time to conspire to transfer all of Terix's assets to TUSA, Ermine IP and Ermine

Services, which then continued doing business under the name 'Terix,' in a brazen fraudulent

transfer to try to thwart the federal judgment."); id. ¶ 52 ("The whole point of this transaction was

to leave the enormous liability of the federal judgment with Terix while transferring Terix's assets

to other entities owned by Appleby and Olding, so that 'Terix' (the business) could effectively

continue in operation rid of its federal judgment liability."); id. ¶ 72 (Appleby and Olding "used

Sevanna and WEX to enter into support contracts with Oracle [to aid in their conspiracy to commit

copyright infringement] because those names would not create suspicion with Oracle.").

Accordingly, the Court concludes that Oracle has sufficiently pleaded its alter ego claim.

**C.  Oracle States a Claim for Fraudulent Transfer**

Oracle's third claim for relief against all Defendants arises under the California Uniform

Voidable Transactions Act ("UVTA"), California Civil Code § 3439, et seq.  The UVTA,

1   formerly known as the California Uniform Fraudulent Transfer Act ("UFTA"), "permits defrauded

2   creditors to reach property in the hands of a transferee." <u>Fid. Nat. Title Ins. Co. v. Schroeder</u>, 179

3   Cal. App. 4th 834, 840–41 (2009).  "A fraudulent conveyance under the [UVTA] involves 'a

4   transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor

5   from reaching that interest to satisfy its claim.'" <u>Filip v. Bucurenciu</u>, 129 Cal. App. 4th 825, 829,

6   28 Cal. Rptr. 3d 884 (2005) (quoting <u>Kirkeby v. Super. Ct.</u>, 33 Cal. 4th 642, 648 (2004); <u>see</u> <u>also</u>

7   <u>Lachapelle v. Kim</u>, No. 15-cv-02195-JSC, 2015 WL 5461542, at *5 (N.D. Cal. Sept. 16, 2015).

8       Under the UVTA, a fraudulent transfer may be "actual" or "constructive."  Cal. Civ. Code

9   § 3439.04(a).  In the "actual" fraudulent transfer context, "[a] transfer made or obligation incurred

10   by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation

11   . . . (1) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."  Cal. Civ. Code

12   § 3439.04(a)(1).  In the "constructive" fraudulent transfer context, a transfer is voidable if the

13   debtor made a transfer "[w]ithout receiving a reasonably equivalent value in exchange for the

14   transfer or obligation," and the debtor either:

15       (A) Was engaged or was about to engage in a business or a
    transaction for which the remaining assets of the debtor were
16       unreasonably small in relation to the business or transaction.

17       (B) Intended to incur, or believed or reasonably should have
    believed that the debtor would incur, debts beyond the debtor's
18       ability to pay as they became due.

19   Cal Civ. Code § 3439.04(a)(2).  Further, "[a] transfer made or obligation incurred by a debtor is

20   voidable as to a creditor whose claim arose before the transfer was made or the obligation was

21   incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably

22   equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that

23   time or the debtor became insolvent as a result of the transfer or obligation."  Cal. Civ. Code §

24   3439.05(a).

25       Oracle alleges that "the day after Terix's delayed second payment under the settlement [in

26   <u>Terix I</u>] was due, Terix's purported general counsel . . . sent Oracle notice" that the following day,

27

28

United States District Court
Northern District of California

1   Terix would make an assignment for the benefit of creditors[6] of Terix's assets to "Terix

2   (assignment for the benefit of creditors, LLC)" ("Terix LLC").  ECF No. 42 ¶ 45.  The letter stated

3   that Terix LLC would then sell substantially all of the assets to TUSA, Ermine IP, and Ermine

4   Services.  Id.  According to the FAC, "the assets simply passed through Terix LLC in an effort to

5   eradicate the real fraud taking place against Terix's creditors as Appleby and Olding re-titled any

6   assets that might be subject to levy by Oracle as judgment creditor from the name 'Terix' to

7   'TUSA, Ermine IP and Ermine Services,'" the "Transferees."  Id. ¶ 46.

8   Oracle asserts its claim under Cal. Civ. Code § 3439.04(a)(1), alleging that "Terix

9   transferred its assets to the Transferees with actual intent to hinder, delay, or defraud Oracle."  Id.

10   ¶ 81.  Oracle also asserts its claim under Cal. Civ. Code  3439.04(a)(2), alleging that "[w]hen

11   Terix transferred its assets to the Transferees for less than a reasonably equivalent value, it was

12   engaged, or was about to engage, in a business or transaction for which Terix's remaining assets

13   were unreasonably small in relation to the business or transaction."  Id. ¶ 83.  Finally, Oracle

14   asserts its claim under Cal Civ. Code § 3439.05, alleging that "[w]hen Terix transferred its assets

15   to Transferees for less than a reasonably equivalent value, it was insolvent . . . or it became so as a

16   result of the transfer."  ECF No. 42 ¶ 85.

17   **1.  Standing**

18   Defendants first argue that Oracle does not have standing to pursue its claims under the

19   UVTA because California Civil Code section 3439.07(d) provides that "[a] creditor who is an

20   assignee of a general assignment for the benefit of creditors . .  . may exercise any and all of the

21   rights and remedies specified in this section . . . ."  ECF No. 57 at 15.  According to Defendants,

22   this language "expressly excludes pursuit of such claims by a creditor who is not also an

23   assignee."  Id.  Because Oracle is a creditor who is not also an assignee, Defendants assert that

24

25   _____

26   [6] "[A]n assignment for benefit of creditors is a widely used method by which an insolvent debtor transfers his or her assets in trust to an assignee, who liquidates them and distributes the proceeds to the creditors."  Sherwood Partners, Inc. v. EOP-Marina Bus. Ctr., L.L.C., 153 Cal. App. 4th

27   977, 981 (2007) (internal quotation marks omitted).  It "is a business liquidation device available to an insolvent debtor as an alternative to formal bankruptcy proceedings."  Id. at 981–82 (internal quotation marks omitted).

28

1    Oracle does not have standing to bring its UVTA claim.  Id.; ECF No. 58 at 23–29.

2        Plaintiffs respond that "[t]he plain language of the statute gives a judgment creditor such as

3    Oracle standing to sue."  ECF No. 65 at 10.  Indeed, California Civil Code section 3439.07(a)

4    provides: "[i]n an action for relief against a transfer or obligation under this chapter, *a creditor*,

5    subject to the limitations in Section 3439.08, may obtain [among other things]: (1) Avoidance of

6    the transfer or obligation to the extent necessary to satisfy the creditor's claim." (emphasis added).

7    Section 3439.07(a) does not require a creditor to also be an assignee for the benefit of creditors, as

8    Defendants suggest.  Moreover, section 3439.07(d) cannot be read to exclude claims brought by

9    non-assignee creditors because that section merely provides that "[a] creditor who is an assignee

10   of a general assignment for the benefit of creditors . . . *may exercise* any and all of the rights and

11   remedies specified in this section *if they are available to any one or more creditors of the*

12   *assignor. . .*"  (emphasis added).  Finally, Defendants cite no California authority supporting their

13   position.  Accordingly, the Court concludes that Oracle has standing to pursue its fraudulent

14   transfer claim.

15                     **2.    Person for whose benefit the transfer was made**

16       Next, the individual Defendants argue that Oracle has failed to state a claim against them

17   in particular because section 3439.08 provides that a "creditor may recover judgment for the value

18   of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is

19   less . . . against the following: (A) The first transferee of the asset or the person for whose benefit

20   the transfer was made [or] (B) An immediate or mediate transferee of the first transferee . . . ."

21   According to the individual Defendants, they are neither the "first transferee of the asset or the

22   person for whose benefit the transfer was made" nor an "immediate or mediate transferee of the

23   first transferee."  ECF No. 58 at 29–30.

24       This argument is unconvincing.  "The statute states that judgment may be had against

25   transferees or 'the person *for whose benefit* the transfer was made.'"  Qwest Communications

26   Corp. v. Weisz, 278 F. Supp. 2d 1188, 1191 (S.D. Cal. 2003) (quoting Cal. Civ. Code §

27   3439.08(b)(1)) (emphasis in Qwest).  In Quest, the court noted that "[i]n most cases, the only

28   likely beneficiaries of a fraudulent transfer are the debtor who avoids his creditors and the

*United States District Court*
*Northern District of California*

1  transferee who receives the assets." Id.  However, where "the debtor is a corporation[,] . . . [i]t is a

2  matter of common sense that the majority shareholder of a corporation . . . would stand to benefit

3  if the assets of his failing business were fraudulently transferred to his father." Id.  Similarly, here,

4  it is a matter of common sense that the co-owners of Terix, Appleby and Olding, stood to benefit

5  from the assets of Terix being fraudulently transferred to TUSA, Ermine IP, and Ermine Services,

6  which Appleby and Olding also co-owned.  ECF No. 42 ¶ 10.  Moreover, as the Quest court noted,

7  "'the party who forces a debtor to make a transfer is almost always the entity for whose benefit

8  such transfer was made.'"  Quest, 278 F. Supp. 2d at 1191 (quoting In re Lucas Dallas, Inc., 185

9  B.R. 801, 809 (B.A.P. 9th Cir. 1995)).  Here, Appleby and Olding are alleged to have forced Terix

10 to make the transfer.  Accordingly, it is reasonable to infer that they were "the person[s] for whose

11 benefit the transfer was made."  Cal. Civ. Code § 3439.08(a).

### 3.   "Actual" Fraudulent Transfer

13        Under the UVTA, "[a] transfer made or obligation incurred by a debtor is voidable as to a

14 creditor . . . if the debtor made the transfer or incurred the obligation . . . (1) [w]ith actual intent to

15 hinder, delay, or defraud any creditor of the debtor."  Cal. Civ. Code § 3439.04(a)(1).  Terix

16 argues that Oracle "fail[s] to cite facts in support of their implausible theory that Terix . . .

17 executed the assignment with 'actual fraudulent intent' to hinder [Oracle's] collection efforts."

18 ECF No. 57 at 17.  Not so.  Because "direct evidence of intent to hinder, delay or defraud is

19 uncommon, the determination typically is made inferentially from circumstances consistent with

20 the requisite intent."  In re Beverly, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007).  Thus, section

21 3439.04(b) "lists eleven nonexclusive factors that historically . . .  have been regarded as

22 circumstantial 'badges of fraud' that are probative of intent."  Id.  Here, the FAC makes factual

23 allegations relevant to several of these factors.

24        For instance, the FAC alleges that "the transfer . . . was to an insider."  Cal. Civ. Code §

25 3439.04(b)(1); see, e.g., ECF No. 42 ¶ 46 ("Appleby and Olding arranged for and finalized the

26 transfer of assets from Terix to their newly created entities (co-Defendants TUSA, Ermine LP and

27 Ermine Services) – effectively a transfer from themselves to themselves."  The FAC also alleges

28 that "the transfer . . . was . . . concealed."  Cal. Civ. Code § 3439.04(b)(3); see, e.g., ECF No. 42 ¶

United States District Court
Northern District of California

47 ("Terix provided Oracle only one day's notice of the impending assignment, which was intentionally not enough time for Oracle to try to stop it.").  Additionally, the FAC alleges that "the debtor had been sued," Cal. Civ. Code § 3439.04(b)(4), that "the transfer was of substantially all the debtor's assets," Cal. Civ. Code § 3439.04(b)(5), that "the value of the consideration received by the debtor was [not] reasonably equivalent to the value of the asset transferred," Cal. Civ. Code § 3439.04(b)(8), and that "the debtor was insolvent or became insolvent shortly after the transfer was made," Cal. Civ. Code § 3439.04(b)(9).  See, e.g., ECF No. 42 ¶ 43 ("As the Terix litigation neared conclusion and it became clear that Terix's liability would be both enormous and undisputed, Appleby and Olding hatched their backup plan."); id.¶ 49 ("The transaction transferred all of Terix's assets [approximately $14.8 million] (with the exception of $138,000 in cash paid to Terix LLC) to the transferees."); id.¶ 51 ("Valuation documents from shortly before the transaction show that Terix had assets of $14.8 million.  The APA states that the transferees assumed liabilities of $7.75 million, which is much less than $14.8 million."); id. ¶ 50 ("The transaction did not transfer Terix's debt to Oracle, and as a result of the assignment Terix had zero assets left to pay any part of its debt to Oracle."); id.¶ 82 ("Terix became insolvent when the transfer was made . . .").  These allegations are more than sufficient to state a claim for actual fraudulent transfer under Cal. Civ. Code § 3439.04(a)(1).[7]

### 4. Constructive Fraudulent Transfer

Under the UVTA, a transfer made to a debtor may also be voidable as to a creditor "if the debtor made the transfer . . . (2) [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation," and the debtor either:

> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Cal Civ Code § 3439.04(a)(2).  "Constructive fraudulent transfer has two elements: reasonably

---

[7] For the same reasons, the Court denies TUSA, Ermine IP, and Ermine Services' motion to dismiss Oracle's actual fraudulent transfer claim.  ECF No. 58 at 31.

1    equivalent value and insolvency." Allstate Ins. Co. v. Countrywide Fin. Corp., 842 F. Supp. 2d

2    1216, 1224 (C.D. Cal. 2012).

3        Terix argues the FAC fails to state a constructive fraudulent transfer claim because it does

4    not allege any "factual support for [its] calculation of the subject assets' values." ECF No. 57 at

5    18. This is simply not the case. The FAC alleges that "*[v]aluation documents from shortly before

6    the transaction* show that Terix had assets of $14.8 million." ECF No. 42 ¶ 51 (emphasis added).

7    While the FAC does not provide any more detail about these "valuation documents," Terix cites

8    no authority for the proposition that greater specificity is required at the pleading stage.

9    Accordingly, the Court denies Terix's motion to dismiss Oracle's claim for constructive fraudulent

10   transfer claim under Cal Civ. Code § 3439.04(a)(2).[8]

11                               **5.   Injury**

12       "A transfer in fraud of creditors may be attacked only by one who is injured thereby."

13   Mehrtash v. Mehrtash, 93 Cal. App. 4th 75, 80 (2001). "It cannot be said that a creditor has been

14   injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to

15   subject to the payment of [her] debt." Id. Terix asserts that "[Oracle's] allegations do not

16   establish that the assignment and transfer put beyond [Oracle]'s reach property [it] would

17   otherwise be able to subject to the payment of the stipulated judgment, as required to show that a

18   plaintiff has been damaged by the fraudulent transfer." ECF No. 57 at 19.

19       Oracle responds that the FAC sufficiently pleads "its injury by alleging that Terix had

20   substantial assets [and that] it transferred all of its assets to transferees while retaining its liability

21   to Oracle." ECF No. 65 at 24. "Without any assets left in its possession, Terix still owes Oracle

22   $57,423,000 with no means of fulfilling any part of that obligation." Id. (citing ECF No. 42 ¶¶ 44,

23   50, 51). Terix does not cite any authority suggesting that more detail is required to sufficiently

24   plead injury. Accordingly, the Court denies Terix's motion to dismiss in this respect.

25                               **6.   Indispensible Party**

26       Finally, Defendants move to dismiss the FAC under Federal Rule of Civil Procedure

27   _____

28   [8] For the same reasons, the Court denies TUSA, Ermine IP, and Ermine Services' motion to
     dismiss Oracle's constructive fraudulent transfer claim. ECF No. 58 at 31.

United States District Court
Northern District of California

1    12(b)(7) based on Oracle's failure to join a purportedly indispensable party, namely the

2    assignment for the benefit of creditors assignee, Terix LLC.  ECF No. 57 at 19 n.5; ECF No. 58 at

3    32.  "[T]o determine whether dismissal is appropriate, the Court engages in 'three successive

4    inquiries.'"  Edwards v. Fed. Home Loan Mortgage Corp., No. 12-cv-04868-JSW, 2012 WL

5    5503532, at *3 (N.D. Cal. Nov. 13, 2012) (quoting EEOC v. Peabody Western Coal Co., 400 F.3d

6    774, 779 (9th Cir. 2005)).  "First, the district court must determine whether the absent party is a

7    'required' party."  Id.  A party is "required" under Fed. R. Civ. P. 19(a)(1) if: "(A) in that person's

8    absence, the court cannot accord complete relief among existing parties; or (B) that person claims

9    an interest relating to the subject of the action and is so situated that disposing of the action in the

10   person's absence may: (i) as a practical matter impair or impede the person's ability to protect the

11   interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or

12   otherwise inconsistent obligations because of the interest."

13          "[T]he person through whom a fraudulent conveyance passed and who acted merely to

14   promote the scheme to defraud creditors, has no legal or equitable interest in the property

15   fraudulently conveyed, and is not a necessary party to a proceeding to set aside the conveyance."

16   Acacia Corp. Mgmt., LLC v. United States, No. 07-cv-1129, 2013 WL 2660319, at *4 (E.D. Cal.

17   June 12, 2013); Tatung Co. v. Shu Tze Hsu, 43 F. Supp. 3d 1036, 1066 (C.D. Cal. 2014) (same).

18   Here, Terix LLC is an entity "through whom a fraudulent conveyance [is alleged to have] passed

19   and [which allegedly] acted merely to promote the scheme to defraud creditors."  ECF No. 42 ¶ 46

20   ("[T]he assets simply passed through Terix LLC in an effort to eradicate the real fraud taking

21   place against Terix's creditors as Appleby and Olding re-titled any assets that might be subject to

22   levy by Oracle as judgment creditor from the name 'Terix' to 'TUSA, Ermine IP and Ermine

23   Services.'"); id. ("Given that Terix LLC did nothing 'for the benefit of creditors,' its execution of

24   the APA as a conduit for the passage of title of Terix's assets to Appleby and Olding's new

25   entities is illusory . . . .").  As a result, the Court concludes that Terix LLC is not an indispensable

26   party.

27   / / /

28   / / /

United States District Court
Northern District of California

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

Both motions to dismiss are denied in their entirety.

IT IS SO ORDERED.

Dated:  September 22, 2016

_____
JON S. TIGAR
United States District Judge