1   LANDAU GOTTFRIED & BERGER LLP
2   PETER M. BRANSTEN (SBN 113352)
    pbransten@lgbfirm.com
3   RACHEL FRANZOIA (SBN 294652)
    rfranzoia@lgbfirm.com
4   1901 Harrison St., Suite 1420
    Oakland, California 94612
5   Telephone: (510) 451-4001
    Fax:  (310) 557-0056

6   Attorneys for Defendants Bernd Appleby,
7   James Olding, TUSA Inc., Ermine IP, Inc., and Ermine Services, LLC

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12   ORACLE AMERICA, INC., a Delaware          Case No.: 3:16-cv-02090-JST
     corporation; ORACLE INTERNATIONAL
13   CORPORATION, a California corporation
                                               **ANSWER OF DEFENDANTS BERND**
14           Plaintiffs,                       **APPLEBY, JAMES OLDING, TUSA,**
                                               **INC., ERMINE IP, INC., AND ERMINE**
15       v.                                    **SERVICES, LLC TO FIRST AMENDED**
                                               **COMPLAINT FOR DAMAGES AND**
16   BERND APPLEBY; JAMES OLDING;              **INJUNCTIVE RELIEF FOR:**
     TERIX COMPUTER COMPANY, INC., a
17   California corporation; TUSA, INC., a
     Delaware corporation; ERMINE IP, INC., a  **(1) COPYRIGHT INFRINGEMENT;**
18   Delaware corporation; and ERMINE          **(2) ALTER EGO LIABILITY;**
     SERVICES, LLC, a Delaware company; and    **(3) FRAUDULENT TRANSFER.**
19   DOES 1-50,
                                               **DEMAND FOR JURY TRIAL**
20           Defendants.

21

22

23

24

25

26

27

28

                                               ANSWER TO FAC
                                               Case No.: 3:16-cv-02090-JST

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Defendants Bernd Appleby ("Appleby"), James Olding ("Olding"), TUSA, Inc. ("TUSA"), Ermine IP, Inc. ("Ermine IP"), and Ermine Services, LLC ("Ermine Services") (collectively "Defendants") hereby answer the First Amended Complaint for Damages and Injunctive Relief for: (1) Copyright Infringement; (2) Alter Ego Liability; and (3) Fraudulent Transfer (the "FAC") of plaintiffs Oracle America, Inc. and Oracle International Corporation (jointly, "Oracle") as follows:

## INTRODUCTION

1.  Defendants deny the allegations in Paragraph 1 of the FAC.

2.  Defendants deny the allegations in Paragraph 2 of the FAC.

3.  Answering Paragraph 3 of the FAC, Defendants admit that: (i) Oracle sued Terix Computer Company, Inc. ("Terix") in July 2013 for copyright infringement and other claims for relief in the action known as *Oracle America, Inc. v. Terix Computer Company, Inc*., *et al*., USDC, Case No. 3:13-cv-03385-JST ("Terix I"), and (ii) Terix stipulated to a judgment in Terix I entered June 10, 2015 which judgment in all respects speaks for itself. Except as expressly admitted, Defendants deny the allegations in Paragraph 3.

4.  Defendants deny the allegations in Paragraph 2 of the FAC.

5.  Answering Paragraph 5 of the FAC, Defendants lack knowledge or information sufficient to admit or deny the allegations regarding Oracle's alleged reasons for bringing this action and, on that ground, deny such allegations. Except as expressly alleged on information and belief, Defendants deny the allegations in Paragraph 5.

## THE PARTIES

6.  Answering Paragraph 6 of the FAC, Defendants admit that: (i) Oracle America, Inc. and/or one or more of its affiliates is a corporation doing business in California; and (ii) Oracle America, Inc. and/or one or more of its affiliates licenses software and sells support and consulting services. Except as expressly admitted herein, Defendants lack knowledge and information sufficient to admit or deny the allegations contained in Paragraph 6 and, on that ground, deny such allegations.

7. Answering Paragraph 7 of the FAC, Defendants admit that: (i) Oracle International Corporation and/or one or more of its affiliates is a corporation doing business in California; and (ii) Oracle International Corporation and/or one or more of its affiliates licenses software and sells support and consulting services. Except as expressly admitted herein, Defendants lack knowledge and information sufficient to admit or deny the allegations contained in Paragraph 7 and, on that ground, deny such allegations.

8. Answering Paragraph 8 of the FAC, Defendants admit that Terix is a California corporation which provided computer hardware support.  Except as expressly admitted, Defendants deny the allegations in Paragraph 8.

9. Answering Paragraph 9 of the FAC, Defendants admit that TUSA, Ermine IP and Ermine Services are Delaware corporations with their principal place of business in Sunnyvale, California. Except as expressly admitted, Defendants deny the allegations in Paragraph 9.

10. Defendants admit the allegations in Paragraph 10 of the FAC.

11. Defendants admit the allegations in Paragraph 11 of the FAC.

12. Defendants lack knowledge or information sufficient to admit or deny the allegations in Paragraph 12 of the FAC and, on that ground, deny such allegations.

13. Answering Paragraph 13 of the FAC, Defendants admit that: (i) the Court has personal jurisdiction over TUSA, Ermine IP, Ermine Services and Appleby, and (ii) Appleby's principal place of residence is in California. Except as expressly admitted herein, Defendants lack knowledge and information sufficient to admit or deny the allegations contained in Paragraph 13 and, on that ground, deny such allegations.

14. Defendants deny the allegations in Paragraph 14 of the FAC.

## JURISDICTION

15. Paragraph 15 of the FAC sets forth legal conclusions to which no response is required. To the extent a response is required to Paragraph 15, Defendants lack knowledge and information sufficient to admit or deny the allegations contained in Paragraph 15 and, on that ground, deny such allegations.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16.   Paragraph 16 of the FAC sets forth legal conclusions to which no response is required. To the extent a response is required to Paragraph 16, Defendants lack knowledge and information sufficient to admit or deny the allegations contained in Paragraph 16 and, on that ground, deny such allegations. Paragraph 15.

17.   Paragraph 17 of the FAC sets forth legal conclusions to which no response is required. To the extent a response is required to Paragraph 17, Defendants lack knowledge and information sufficient to admit or deny the allegations contained in Paragraph 17 and, on that ground, deny such allegations. Paragraph 17.

18.   Answering Paragraph 18 of the FAC, Defendants deny that: (i) Defendants any committed wrongful intentional acts, (ii) Defendants caused harm to Oracle, and (iii) Defendants are amenable to personal jurisdiction in this District. Except as herein expressly alleged Defendants lack knowledge and information sufficient to admit or deny the allegations contained in Paragraph 18 and, on that ground, deny such allegations.

**INTRADISTRICT ASSIGNMENT**

19.   Paragraph 19 of the FAC sets forth legal conclusions to which no response is required. To the extent a response is required to Paragraph 19, Defendants lack knowledge and information sufficient to admit or deny the allegations contained in Paragraph 19 and, on that ground, deny such allegations.

**FACTUAL ALLEGATIONS**

20.   Answering Paragraph 20 of the FAC, Defendants admit that Oracle is a supplier of enterprise hardware and software systems and of related technical support and consulting services for those systems, and that Oracle offers annual support contracts to users of enterprise hardware and software systems. Except as expressly admitted herein, Defendants lack knowledge and information sufficient to admit or deny the allegations contained in Paragraph 20 and, on that ground, deny such allegations.

21.   Defendants lack knowledge and information sufficient to admit or deny the allegations contained in Paragraph 21 of the FAC, and, on that ground, deny such allegations.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

22.   Answering Paragraph 22 of the FAC, Defendants admit that Oracle offers technical support services for its hardware systems, including the Solaris operating system. Except as expressly admitted herein, Defendants deny the allegations contained in Paragraph 22 of the FAC.

23.   Defendants lack knowledge and information sufficient to admit or deny the allegations in Paragraph 23 of the FAC, and, on that ground, deny such allegations.

24.   Defendants lack knowledge and information sufficient to admit or deny the allegations in Paragraph 23 of the FAC, and, on that ground, deny such allegations.

25.   Answering Paragraph 25 of the FAC, Defendants admit that the quotation set forth in the first sentence at one time appeared on a website maintained by Terix. Except as expressly admitted herein, Defendants deny the allegations contained in Paragraph 25 of the FAC.

26.   Defendants deny the allegations in Paragraph 26 of the FAC.

27.   Defendants deny the allegations in Paragraph 27 of the FAC.

28.   Defendants deny the allegations in Paragraph 28 of the FAC.

29.   Defendants deny the allegations in Paragraph 29 of the FAC.

30.   Defendants deny the allegations in Paragraph 30 of the FAC.

31.   Defendants deny the allegations in Paragraph 31 of the FAC.

32.   Defendants deny the allegations in Paragraph 32 of the FAC.

33.   Defendants deny the allegations in Paragraph 33 of the FAC.

34.   Defendants deny the allegations in Paragraph 34 of the FAC.

35.   Defendants deny the allegations in Paragraph 35 of the FAC.

36.   Defendants deny the allegations in Paragraph 36 of the FAC.

37.   Defendants deny the allegations in Paragraph 37 of the FAC.

38.   Defendants deny the allegations in Paragraph 38 of the FAC.

39.   Defendants deny the allegations in Paragraph 39 of the FAC.

40.   Answering Paragraph 40 of the FAC, Defendants admit that Oracle sued Terix, Sevanna Financial, Inc. ("Sevanna") and West Coast Computer Exchange, Inc. ("WEX") in July 2013 for copyright infringement and other claims for relief in Terix I. Except as expressly

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

1  admitted, Defendants deny the allegations in Paragraph 40.

2      41.   Answering Paragraph 41 of the FAC, Defendants admit that Terix, Sevanna and WEX

3  stipulated to a judgment in Terix I entered June 10, 2015 which in all respects speaks for itself.

4  Except as expressly admitted, Defendants deny the allegations in Paragraph 41.

5      42.   Defendants deny the allegations in Paragraph 42 of the FAC.

6      43.   Answering Paragraph 43 of the FAC, Defendants admit that: (i) Ermine IP was

7  incorporated in the State of Delaware on March 19, 2015, (ii) Appleby is the President, Chief

8  Financial Officer and Chief Executive Officer of Ermine IP, (iii) Olding is the Secretary of Ermine

9  IP, (iv) TUSA was incorporated in the State of Delaware on March 19, 2015, (v) Appleby is the

10  President, Chief Financial Officer and Chief Executive Officer of Ermine IP, (vi) Olding is the

11  Secretary of TUSA, (vii) Ermine Services was incorporated in the State of Delaware on April 2,

12  2015, and (viii) Appleby is the Chief Executive Officer of Ermine Services. Except as expressly

13  admitted, Defendants deny the allegations in Paragraph 43.

14      44.   Defendants deny the allegations in Paragraph 44 of the FAC.

15      45.   Answering Paragraph 45 of the FAC, Defendants admit that Terix's counsel sent a

16  letter to Oracle's counsel dated February 16, 2016 which in all respects speaks for itself. Except as

17  expressly admitted, Defendants deny the allegations in Paragraph 45.

18      46.   Defendants deny the allegations in Paragraph 46 of the FAC.

19      47.   Defendants deny the allegations in Paragraph 47 of the FAC.

20      48.   Answering Paragraph 48 of the FAC, Defendants admit the existence of a General

21  Assignment and the existence of an Asset Purchase Agreement which documents in all respects

22  speak for themselves. Except as herein expressly admitted, Defendants deny the allegations in

23  Paragraph 48 of the FAC.

24      49.   Defendants deny the allegations in Paragraph 49 of the FAC.

25      50.   Defendants deny the allegations in Paragraph 50 of the FAC.

26      51.   Defendants deny the allegations in Paragraph 51 of the FAC.

27      52.   Defendants deny the allegations in Paragraph 52 of the FAC.

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

53.   Answering Paragraph 53 of the FAC, Defendants admit that TUSA, Ermine IP, and Ermine Services are operating businesses and that one or more of them maintains the website known as www.terix.com. Except as expressly admitted, Defendants deny the allegations in Paragraph 53.

54.   Defendants deny the allegations in Paragraph 54 of the FAC.

### First Claim for Relief

### (Against Appleby and Olding)

### Copyright Infringement – Vicarious and Contributory Liability

55.   Appleby and Olding incorporate by reference and restate their responses to the allegations in paragraphs 1 through 54 of the FAC as if fully set forth herein.

56.   Appleby and Olding lack knowledge or information sufficient to admit or deny the allegations in Paragraph 56 of the FAC, and, on that ground, deny such allegations.

57.   Appleby and Olding lack knowledge or information sufficient to admit or deny the allegations in Paragraph 57 of the FAC, and, on that ground, deny such allegations.

58.   Appleby and Olding lack knowledge or information sufficient to admit or deny the allegations in Paragraph 58 of the FAC, and, on that ground, deny such allegations.

59.   Appleby and Olding deny the allegations in Paragraph 59 of the FAC.

60.   Appleby and Olding deny the allegations in Paragraph 60 of the FAC.

61.   Appleby and Olding deny the allegations in Paragraph 61 of the FAC.

62.   Appleby and Olding deny the allegations in Paragraph 62 of the FAC.

63.   Appleby and Olding deny the allegations in Paragraph 63 of the FAC.

64.   Appleby and Olding deny the allegations in Paragraph 64 of the FAC.

65.   Appleby and Olding deny the allegations in Paragraph 65 of the FAC.

66.   Appleby and Olding deny the allegations in Paragraph 66 of the FAC.

### Second Claim for Relief

### (Appleby and Olding)

### Alter Ego Liability

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

67.   Appleby and Olding incorporate by reference and restate their responses to the allegations in paragraphs 1 through 66 of the FAC as if fully set forth herein.

68.   Answering Paragraph 68 of the FAC, Appleby and Olding admit that: (i) they own the stock of Terix and Sevanna, and (ii) they were officers of Terix, Sevanna and WEX. Except as expressly admitted, Appleby and Olding deny the allegations in Paragraph 68.

69.   Appleby and Olding deny the allegations in Paragraph 69 of the FAC.

70.   Appleby and Olding deny the allegations in Paragraph 70 of the FAC.

71.   Appleby and Olding deny the allegations in Paragraph 71 of the FAC.

72.   Appleby and Olding deny the allegations in Paragraph 72 of the FAC.

73.   Appleby and Olding deny the allegations in Paragraph 73 of the FAC.

74.   Appleby and Olding deny the allegations in Paragraph 74 of the FAC.

75.   Appleby and Olding deny the allegations in Paragraph 75 of the FAC.

76.   Appleby and Olding deny the allegations in Paragraph 76 of the FAC.

### Third Claim for Relief

### (All Defendants)

### Fraudulent Transfer - Cal. Civil Code § 3439, *et seq*.

77.   Defendants incorporate by reference and restate their responses to the allegations in paragraphs 1 through 76 of the FAC as if fully set forth herein.

78.   Defendants deny the allegations in Paragraph 78 of the FAC.

79.   Defendants deny the allegations in Paragraph 79 of the FAC.

80.   Defendants deny the allegations in Paragraph 80 of the FAC.

81.   Defendants deny the allegations in Paragraph 81 of the FAC.

82.   Defendants deny the allegations in Paragraph 82 of the FAC.

83.   Defendants deny the allegations in Paragraph 83 of the FAC.

84.   Defendants deny the allegations in Paragraph 84 of the FAC.

85.   Defendants deny the allegations in Paragraph 85 of the FAC.

86.   Defendants deny the allegations in Paragraph 86 of the FAC.

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

1    87.   Defendants deny the allegations in Paragraph 87 of the FAC.

2                          **AFFIRMATIVE DEFENSES**

3    Defendants allege the following affirmative defenses and reserve the right to assert

4    additional affirmative defenses as appropriate.

5                          **First Affirmative Defense**

6    1.    Oracle's copyright infringement claim is barred under the doctrine of claim

7    preclusion due to the judgment in Terix I.

8                          **Second Affirmative Defense**

9    2.    Oracle's copyright infringement claim is barred under the doctrine of fair use.

10   3.    Even if Oracle could satisfy the other elements for some or all of its claims of

11   copyright infringement, any use Terix made of Oracle's allegedly copyrighted material was a fair

12   use that is not actionable. Specifically, the overarching use of the limited amount of copyrighted

13   material contained the subject patches, bug fixes and security updates, and of firmware, supports

14   the general goal of copyright protection in promoting the sciences and the arts. For example, the

15   general availability and fair use of the subject patches, bug fixes and security updates for the

16   existing installed base of Solaris hardware and software, without having to pay monopolistic

17   prices for Oracle's limited support, maintains and potentially expands the Solaris user base and

18   creates an incentive for Oracle (and others who have commercialized Open Source Solaris) to

19   continue the development of Solaris generally and of the hardware where it resides.

20   4.    The purpose and character of Terix's alleged use supports a finding of fair use. For

21   example, Oracle generally issues patches in large "bundles" sometimes called "Recommended &

22   Security Patches". Existing users of Solaris, especially older versions 8, 9 and 10 (which are at

23   issue in this case) have specific configurations that are typically stable and there is a general

24   reluctance to shut down some Solaris systems for patching and maintenance due the potential for

25   significant business disruption. Therefore, Terix's customers typically sought guidance on the best

26   way to patch such systems without adversely affecting the existing configuration and operation

27   and without having to take systems off-line. The review and analysis of the existing configuration

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and use of the customer installations and the available patching combinations combined with the disaggregation and application of the individual patches contained within the patch bundles can create a unique and customized transformation (primarily transformative in usage and not content of the specific patch) of the existing installation of the subject copyrighted iteration of the Solaris operating system. Additionally, uses other than fixing existing installations of Solaris, such as for review, study, preservation, and analysis also support fair use.

5.    At all times material to Oracle's copyright infringement claim, Terix typically acted as the Solaris user's agent and the ultimate use of the small portion of copyrighted Solaris code in the patches is generally to repair an existing defect (or security vulnerability) and in that sense is a partially-commercial use of the copyrighted code. Terix did not "sell" the patch, rather the provision of the patch was part of the overall service offered to the Solaris user. Similar to the doctrine of repair and reconstruction, the application of the patch (in many instances) is not a commercial "second creation" of the copyrighted article, rather it is the application of largely un-copyrighted code to repair the system the customer already has a license to that code due to its purchase of the hardware in the first instance and the application of the patch to operating system code is typically to restore the operating system's normal and ordinary functionality. Like Terix, the customer was not copying and reselling the patch for profit, rather it was fixing a machine it had already paid for (the operating system is not an application that performs specific tasks, rather it was simply an intermediary that allowed the hardware to function with other application programs). Maintaining the security and integrity of the operating system also creates a significant public benefit in that that many of the users of these systems are financial institutions, the military and government entities, and healthcare providers and to jeopardize the security of the data and the operation of the systems generally could have significant adverse consequences for the public that depends on them.

6.    The nature of the copyrighted work supports a finding of fair use. The copyrighted code at issue here (whether in binary form or as source code) is typically a small piece of the patches at issue. Oracle has admitted that patches are generally created with some original,

9

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

copyrighted Solaris code and then combined with new code (not registered) that actually fixes the bug, vulnerability or issue with the operating system. The copyrighted code is primarily functional and not creative. The code alleged to be infringed is typically just the "hook" to an existing routine or file that allows the unregistered code "the actual fix" to be properly located and aligned within the system as a whole. Also, in some cases the underlying copyrighted operating system is no longer available commercially and is no longer eligible for certain types of support from Oracle thereby making it more likely that the use of patches, bug fixes and security updates is fair use. Finally, in contrast to allegations of infringement of unpublished works, the vast majority of the patches, bug fixes and security updates were not only published, they were published as open source code available for free to anyone in the world. . Furthermore, Sun and subsequently Oracle provided licensee holders with thousands of free patches on a periodic basis since 2005. Patches were distributed on Compact Disc for a nominal fee. The latest Oracle patch distribution for Solaris 10 (Oracle Solaris 10 1/13 Media Pack, v.1, part number B72055-01) contained many thousands of the patches.

7.     In most cases the patches, bug fixes and security updates at issue in this case contain only a small portion of the millions of lines of code comprising the registered versions of Solaris. Also, the allegedly infringing code in the patches, bug fixes and security updates are not the "key" ingredients to the overall registered Solaris operating system. For example, Oracle has not alleged that any of patches, bug fixes and security updates contain the Solaris kernel or the entirety of certain important functions such as ZFS. In many instances, the nature of the copyrighted code is purely functional and has minimal creativity.

8.     Lastly, the use of the patches, bug fixes and security updates (both by Terix and by the Solaris end users) does not have any significant material effect upon the market for the copyrighted Solaris operating system. The patches, bug fixes and security updates are primarily fixing older versions of Solaris that are no longer commercially available so the market for those copyrighted works is non-existent. The patches, bug fixes and security updates allegedly infringed cannot be aggregated into the Solaris operating system in any event should there actually be a

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

1  market for these older versions of Solaris.

2  **Third Affirmative Defense**

3      9.      Oracle's copyright infringement claim is barred by applicable statutes of limitation.

4      10.    Generally, Oracle has known about Terix and its status as a third party service

5  provider since as early as 2005 when Terix contracted for time & material support for Solaris on

6  behalf of its clients. Specifically, as early as 2008, Oracle contacted Terix by e-mail regarding a

7  number of service contracts that Oracle intended to cancel because they were being provided by

8  Terix (a known third party service provider) and Oracle was trying to limit the ability of Terix

9  (and other third party service providers) ability to provide services for Solaris hardware and

10  software. After Terix responded and complained about the plan to cancel some of its customers'

11  service contracts, Larry Adler, then Sun's Global Business Governance Manager, responded and

12  requested information from Terix. Specifically, Mr. Adler asked for "contract number, (b) your

13  name, (c) the name of the company you are employed by, (d) all of the site address in which the

14  services are being provided, (e) the name of the end user, if other than your company, and (e) any

15  facts or background you have that are relevant to assess the claimed error, and we will contact you

16  to resolve the matter." Terix responded, stating that

17          TERiX provides consultative support to customers who (among other operating

18          systems) utilize Solaris operating systems, and who have valid rights to use,
        entitlement and license, granted by Sun for products. TERiX assists clients with

19          valid rights and license and in such service acts as an agent for such clients. TERiX
        is not in breach of any agreement, license, distribution right, trademark or

20          intellectual property of Sun Microsystems, or any third party. At TERiX, we fully

21          support OEM rights and seek to protect them in our consulting practices, and the
        statements claimed by Sun of breach are false and without merit. We ask that you

22          reinstate the canceled contracts immediately.

23      11.    Thereafter Oracle (including its in-house attorneys) inquired further about the

24  nature of Terix's services, including Terix's claim that it provided Solaris hardware and software

25  support as an agent of its customers. Terix laid out in great detail its business model of providing

26  Solaris support for its customers in competition with Oracle, including its use of email

27  pseudonyms due to Oracle's apparent practice of "blacklisting" communications with email

28  addresses with "@terix.com" domains. Terix and Oracle engaged in a back and forth about the

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

propriety of Terix's business practices and Oracle insisted that it did not have to do business with Terix, but ultimately Oracle took no action in light of Terix's disclosures and the information in Oracle's possession.

**Fourth Affirmative Defense**

12. Oracle's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

13. Generally, Oracle has known about Terix and its status as a third party service provider since as early as 2005 when Terix contracted for time & material support for Solaris on behalf of its clients. Upon information and belief, as early as November 2007, Oracle employees were discussing internally that Terix was allegedly redistributing Solaris patches and Oracle employees questioned whether it was licensed to do so, taking the position ultimately that it is "very likely that they are breaking the law."

14. Also, as early as 2008, Oracle contacted Terix by e-mail regarding a number of service contracts that Oracle intended to cancel because they were being provided by Terix (a known third party service provider or "TPM") and Oracle was trying to limit the ability of Terix (and other TPMs) ability to provide services for Solaris hardware and software. After Terix responded and complained about the plan to cancel some of its customers' service contracts, Larry Adler, then Sun's Global Business Governance Manager, responded and requested information from Terix. Specifically, Mr. Adler asked for "contract number, (b) your name, (c) the name of the company you are employed by, (d) all of the site address in which the services are being provided, (e) the name of the end user, if other than your company, and (e) any facts or background you have that are relevant to assess the claimed error, and we will contact you to resolve the matter." Terix responded, stating that:

> TERiX provides consultative support to customers who (among other operating systems) utilize Solaris operating systems, and who have valid rights to use, entitlement and license, granted by Sun for products. TERiX assists clients with valid rights and license and in such service acts as an agent for such clients. TERiX is not in breach of any agreement, license, distribution right, trademark or intellectual property of Sun Microsystems, or any third party. At TERiX, we fully support OEM rights and seek to protect them in our consulting practices, and the

statements claimed by Sun of breach are false and without merit. We ask that you reinstate the canceled contracts immediately.

15.     Thereafter Oracle (including its in-house attorneys) inquired further about the nature of Terix's services, including Terix's claim that it provided Solaris hardware and software support as an agent of its customers. Terix laid out in great detail its business model of providing Solaris support for its customers in competition with Oracle, including its use of email pseudonyms due to Oracle's apparent practice of "blacklisting" communications with email addresses with "@terix.com" domains. Terix and Oracle engaged in a back and forth about the propriety of Terix's business practices and Oracle insisted that it did not have to do business with Terix and that Terix's actions were unlawful. Oracle also claimed that Terix's actions violated its intellectual property rights. Ultimately Oracle took no action (until the filing of the present action) in light of Terix's disclosures, the information in Oracle's possession, Oracle's stated belief that Terix's actions were unlawful and prohibited by Oracle's policies, procedures, contractual agreements and existing intellectual property rights. Oracle also contacted other Terix customers in this general time frame and claimed that Terix's (and the specific customer's) actions were unlawful and threatened possible legal action.

16.     For example, in 2009 Oracle made a concerted effort to disrupt Terix's relationship with its then-customer. In late 2009, Oracle wrote to the customer and informed them that Terix was not authorized to access any Oracle on-line support resources and was not authorized to download the vast majority of patches for the customer's Solaris installation. Oracle also claimed that support contracts are non-transferable and that support contract is requested for every system the gets patched. Oracle went on to claim that "[v]iolation of the Software License Agreement [by allowing third parties such as Terix to use Oracle's on-line support resources ] may result in a violation of [Oracle's] valuable Intellectual Property Rights." Oracle accused the customer of violations of Oracle's intellectual property and contractual rights by using Terix as a service provider. Oracle threatened to audit the customer and threatened further legal action if the customer did not abandon Terix and purchase support contracts for its Solaris servers. The customer relented under the Oracle pressure and cancelled the support contracts for Sun hardware

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

1 but kept non-Sun hardware under contract with Terix.

2      17.      Oracle alleged in Terix I that customers who purchase a technical support

3 agreement from Oracle – whether directly or indirectly – receive credentials that are linked to

4 products covered by the support contract. Oracle further alleged in Terix I, however, that Terix

5 and others were able to download Oracle's proprietary Solaris Updates and firmware for

6 computers that were allegedly not on active software support contracts with Oracle. Upon

7 information and belief, Oracle has known about these practices by its customers and has not

8 brought suit against any customers who are not TPMs competing with Oracle in the support

9 market.

10      18.      Finally, Oracle made statements to governmental entities claiming, in effect, that

11 changes to Sun's prior policies that placed new restrictions upon access to Oracle's intellectual

12 property for support of Solaris hardware would be "prospective" and only apply to systems

13 purchased after March 16, 2010. Through its own actions Oracle was fully informed of Terix's

14 alleged infringing conduct, including the use of pseudonyms to conceal Terix's identity in

15 communicating with Oracle. Oracle's own statements to Terix and threats of legal action to its

16 customers gave Terix the belief that Oracle actually believed that the accused activities were

17 unlawful and that for some of the relevant time that legal action was imminent. Although, as time

18 wore on without any subsequent legal action, Terix and Appleby and Olding gradually began to

19 believe that Oracle had changed its position and now accepted Terix's defense of its activities.

20 Terix and Appleby and Olding were ignorant of the true facts and reasonably relied upon Oracle's

21 inaction (and statements to the contrary to certain governmental entities) to continue the provision

22 of support for Solaris installations. Oracle's unreasonable delay has prejudiced Appleby and

23 Olding and prevented the gathering of potential exculpatory evidence and in some instances

24 resulted in the loss or destruction such evidence.

25      19.      Additionally, Oracle is barred under the doctrine of equitable estoppel from seeking

26 to establish that either Appleby or Olding are vicariously liable for the acts of copyright

27 infringement alleged in Terix I or that either of them is the alter ego of Terix, Sevanna or WEX. In

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

1   exchange for agreeing to cause Terix, Sevanna, and WEX to stipulate to the judgment in Terix I,

2   Oracle led Appleby and Olding to believe that it would not pursue such claims against them.

3   Appleby and Olding would not have caused Terix, Sevanna, and WEX to stipulate to the judgment

4   in Terix I if they had known of Oracle's secret intent to prosecute claims against them for the acts

5   of copyright infringement alleged in Terix I and for alter ego liability.

6                           **Fifth Affirmative Defense**

7       20.      Oracle's claims are barred, in whole or in part, by the doctrine of laches.

8       21.      Generally, Oracle knew about Terix and its status as a third party service provider

9   since as early as 2005 when Terix contracted for time & material support for Solaris on behalf of

10  its clients. Upon information and belief, as early as November 2007, Oracle employees were

11  discussing internally that Terix was allegedly redistributing Solaris patches and Oracle employees

12  questioned whether it was licensed to do so, taking the position ultimately that it is "very likely

13  that they are breaking the law."

14      22.      Also, as early as 2008, Oracle contacted Terix by e-mail regarding a number of

15  service contracts that Oracle intended to cancel because they were being provided by Terix (a

16  known TPM) and Oracle was trying to limit the ability of Terix (and other TPMs) ability to

17  provide services for Solaris hardware and software. After Terix responded and complained about

18  the plan to cancel some of its customers' service contracts, Larry Adler, then Sun's Global

19  Business Governance Manager, responded and requested information from Terix. Specifically,

20  Mr. Adler asked for "contract number, (b) your name, (c) the name of the company you are

21  employed by, (d) all of the site address in which the services are being provided, (e) the name of

22  the end user, if other than your company, and (e) any facts or background you have that are

23  relevant to assess the claimed error, and we will contact you to resolve the matter." Terix

24  responded, stating that:

25      TERiX provides consultative support to customers who (among other operating systems)

26  utilize Solaris operating systems, and who have valid rights to use, entitlement and license,

27  granted by Sun for products. TERiX assists clients with valid rights and license and in such

28

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

service acts as an agent for such clients. TERiX is not in breach of any agreement, license, distribution right, trademark or intellectual property of Sun Microsystems, or any third party. At TERiX, we fully support OEM rights and seek to protect them in our consulting practices, and the statements claimed by Sun of breach are false and without merit. We ask that you reinstate the canceled contracts immediately.

23.     Thereafter Oracle (including its in-house attorneys) inquired further about the nature of Terix's services, including Terix's claim that it provided Solaris hardware and software support as an agent of its customers. Terix laid out in great detail its business model of providing Solaris support for its customers in competition with Oracle, including its use of email pseudonyms due to Oracle's apparent practice of "blacklisting" communications with email addresses with "@terix.com" domains. Terix and Oracle engaged in a back and forth about the propriety of Terix's business practices and Oracle insisted that it did not have to do business with Terix and that Terix's actions were unlawful. Oracle also claimed that Terix's actions violated its intellectual property rights. Ultimately Oracle took no action (until the filing of the present action) in light of Terix's disclosures, the information in Oracle's possession, Oracle's stated belief that Terix's actions were unlawful and prohibited by Oracle's policies, procedures, contractual agreements and existing intellectual property rights. Oracle also contacted other Terix customers in this general time frame and claimed that Terix's (and the specific customer's) actions were unlawful and threatened possible legal action.

24.     For example, in 2009 Oracle made a concerted effort to disrupt Terix's relationship with its then-customer. In late 2009, Oracle wrote to the customer and informed them that Terix was not authorized to access any Oracle on-line support resources and was not authorized to download the vast majority of patches for the customer's Solaris installation. Oracle also claimed that support contracts are non-transferable and that support contract is requested for every system the gets patched. Oracle went on to claim that "[v]iolation of the Software License Agreement [by allowing third parties such as Terix to use Oracle's on-line support resources ] may result in a violation of [Oracle's] valuable Intellectual Property Rights." Oracle accused the customer of

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

violations of Oracle's intellectual property and contractual rights by using Terix as a service provider. Oracle threatened to audit the customer and threatened further legal action if the customer did not abandon Terix and purchase support contracts for its Solaris servers. The customer relented under the Oracle pressure and cancelled the support contracts for Sun hardware but kept non-Sun hardware under contract with Terix.

25.     Appleby and Olding are informed and believe, and based thereon allege, that Oracle contends that customers who purchase a technical support agreement from Oracle – whether directly or indirectly – receive credentials that are linked to products covered by the support contract. Appleby and Olding are further informed and believe, and based thereon allege, that Oracle also contends that Terix and others were able to download Oracle's proprietary Solaris Updates and firmware for computers that were allegedly not on active software support contracts with Oracle. Appleby and Olding are informed and believe, and on that basis allege, that Oracle has known about these practices by its customers and has not brought suit against any customers who are not TPMs competing with Oracle in the support market.

26.     Finally, Oracle made statements to governmental entities claiming, in effect, that changes to Sun's prior policies that placed new restrictions upon access to Oracle's intellectual property for support of Solaris hardware would be "prospective" and only apply to systems purchased after March 16, 2010.

27.     Through its own actions, Oracle was fully informed of Terix's alleged infringing conduct, including the use of pseudonyms to conceal Terix's identity in communicating with Oracle. Oracle's own statements to Terix and threats of legal action to its customers gave Terix and Appleby and Olding the belief that Oracle actually believed that the accused activities were unlawful and that for some of the relevant time that legal action was imminent. Although, as time wore on without any subsequent legal action, Terix and Appleby and Olding gradually began to believe that Oracle had changed its position and now accepted Terix's defense of its activities. Terix and Appleby and Olding were ignorant of the true facts and reasonably relied upon Oracle's inaction (and statements to the contrary to certain governmental entities) to continue the provision

17

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

1   of support for Solaris installations. Oracle's unreasonable delay has prejudiced Appleby and

2   Olding and prevented the gathering of potential exculpatory evidence and in some instances

3   resulted in the loss or destruction such evidence.

4       28.     Additionally, Oracle delayed unreasonably in seeking to establish that either

5   Appleby or Olding was the alter ego of either Terix, Sevanna, or WEX.

6                       **Sixth Affirmative Defense**

7       29.     One or more of Oracle's claims is barred under the doctrine of waiver.

8       30.     Upon learning of Terix's allegedly wrongful acts, Oracle was required to

9   investigate and prevent the allegedly unlawful conduct as soon as possible and at least within the

10  statutory limitations period for the first unlawful act. Oracle's failure to act, as described below,

11  evinces intent to freely and knowingly give up the right to later seek redress for the alleged

12  wrongs.

13      31.     Generally, Oracle has known about Terix and its status as a third party service

14  provider since as early as 2005 when Terix contracted for time & material support for Solaris on

15  behalf of its clients. Appleby and Olding are informed and believe, and on that basis allege, that as

16  early as November 2007, Oracle employees were discussing internally that Terix was allegedly

17  redistributing Solaris patches and Oracle employees questioned whether it was licensed to do so,

18  taking the position ultimately that it is "very likely that they are breaking the law."

19      32.     Also, as early as 2008, Oracle contacted Terix by e-mail regarding a number of

20  service contracts that Oracle intended to cancel because they were being provided by Terix (a

21  known TPM) and Oracle was trying to limit the ability of Terix (and other TPMs) ability to

22  provide services for Solaris hardware and software. After Terix responded and complained about

23  the plan to cancel some of its customers' service contracts, Larry Adler, then Sun's Global

24  Business Governance Manager, responded and requested information from Terix. Specifically,

25  Mr. Adler asked for "contract number, (b) your name, (c) the name of the company you are

26  employed by, (d) all of the site address in which the services are being provided, (e) the name of

27  the end user, if other than your company, and (e) any facts or background you have that are

28

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

relevant to assess the claimed error, and we will contact you to resolve the matter." Terix responded, stating that:

TERiX provides consultative support to customers who (among other operating systems) utilize Solaris operating systems, and who have valid rights to use, entitlement and license, granted by Sun for products. TERiX assists clients with valid rights and license and in such service acts as an agent for such clients. TERiX is not in breach of any agreement, license, distribution right, trademark or intellectual property of Sun Microsystems, or any third party. At TERiX, we fully support OEM rights and seek to protect them in our consulting practices, and the statements claimed by Sun of breach are false and without merit. We ask that you reinstate the canceled contracts immediately.

33.    Thereafter Oracle (including its in-house attorneys) inquired further about the nature of Terix's services, including Terix's claim that it provided Solaris hardware and software support as an agent of its customers. Terix laid out in great detail its business model of providing Solaris support for its customers in competition with Oracle, including its use of email pseudonyms due to Oracle's apparent practice of "blacklisting" communications with email addresses with "@terix.com" domains. Terix and Oracle engaged in a back and forth about the propriety of Terix's business practices and Oracle insisted that it did not have to do business with Terix and that Terix's actions were unlawful. Oracle also claimed that Terix's actions violated its intellectual property rights. Ultimately Oracle took no action (until the filing of the present action) in light of Terix's disclosures, the information in Oracle's possession, Oracle's stated belief that Terix's actions were unlawful and prohibited by Oracle's policies, procedures, contractual agreements and existing intellectual property rights. Oracle also contacted other Terix customers in this general time frame and claimed that Terix's (and the specific customer's) actions were unlawful and threatened possible legal action.

34.    For example, in 2009 Oracle made a concerted effort to disrupt Terix's relationship with its then-customer. In late 2009, Oracle wrote to the customer and informed them that Terix was not authorized to access any Oracle on-line support resources and was not authorized to

Landau Gottfried & Berger LLP
Attorneys at Law
Los Angeles, California

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

download the vast majority of patches for the customer's Solaris installation. Oracle also claimed that support contracts are non-transferable and that support contract is requested for every system the gets patched. Oracle went on to claim that "[v]iolation of the Software License Agreement [by allowing third parties such as Terix to use Oracle's on-line support resources ] may result in a violation of [Oracle's] valuable Intellectual Property Rights." Oracle accused the customer of violations of Oracle's intellectual property and contractual rights by using Terix as a service provider. Oracle threatened to audit the customer and threatened further legal action if the customer did not abandon Terix and purchase support contracts for its Solaris servers. The customer relented under the Oracle pressure and cancelled the support contracts for Sun hardware but kept non-Sun hardware under contract with Terix.

35.     Appleby and Olding are informed and believe, and based thereon allege, that Oracle contends that customers who purchase a technical support agreement from Oracle – whether directly or indirectly – receive credentials that are linked to products covered by the support contract. Appleby and Olding are further informed and believe, and based thereon allege, that Oracle also contends that Terix and others were able to download Oracle's proprietary Solaris Updates and firmware for computers that were allegedly not on active software support contracts with Oracle. Upon information and belief, Oracle has known about these practices by its customers and has not brought suit against any customers who are not TPMs competing with Oracle in the support market.

36.     Finally, Oracle made statements to governmental entities claiming, in effect, that changes to Sun's prior policies that placed new restrictions upon access to Oracle's intellectual property for support of Solaris hardware would be "prospective" and only apply to systems purchased after March 16, 2010.

37.     Through its own actions Oracle was fully informed of Terix's alleged infringing conduct, including the use of pseudonyms to conceal Terix's identity in communicating with Oracle. Oracle's own statements to Terix and threats of legal action to its customers gave Terix and Appleby and Olding the belief that Oracle actually believed that the accused activities were

20

unlawful and that for some of the relevant time that legal action was imminent. Although, as time wore on without any subsequent legal action, Terix and Appleby and Olding gradually began to believe that Oracle had changed its position and now accepted Terix's defense of its activities. These actions evince Oracle's intent to freely and knowingly give up the right to later seek redress for the alleged wrongs.

### Seventh Affirmative Defense

38.     Even if Oracle could satisfy the other elements of copyright infringement, any use Terix made of Oracle's copyrighted material is lawful use based on agreements between Oracle and its customers and/or former customers. Oracle has either expressly or impliedly granted a license to its customers with the Solaris operating system that includes patches, bug fixes and updates, and Terix acted as these customers' authorized agents within the terms of such licenses.

39.     Appleby and Olding are informed and believe, and based thereon allege, that in order for a Solaris end user/Oracle customer to begin its relationship with Oracle, a General Terms Agreement ("GTA") is put in place that acts as a overarching mechanism for the formation of other agreements, and which typically contains other schedules (Purchase Exhibit, Services Exhibit, etc.). The GTA is a negotiated agreement that typically starts from a common template. The GTA and its schedules typically provide a license grant from Oracle to the customer for "Software" which includes any and all binary software programs listed in Oracle's standard price lists published from time to time, any Updates, and any related user manuals or other documentation. "Updates" are defined as subsequent releases and error corrections for software previously licensed. Under these terms, Oracle granted its General Terms customers a perpetual, nonexclusive and nontransferable license that was only limited by any restrictions set out in the order confirmation and by the supplemental terms accompanying the software.

40.     Solaris 8, 9 and 10 (all variants) are primarily at issue in this case. Solaris 8 and 9 (all variants) were licensed pursuant to Oracle's standard-form Binary Code License ("BCL"). Upon information and belief, the terms of the BCL have never been modified since first issuance. The BCL provides the Solaris user with the perpetual, nonexclusive and nontransferable right to

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

use Solaris and to use patches and updates (referred to as "error corrections") and pursuant to its integration clause does not allow for any changes to the license grant unless those changes are made in a writing signed by both parties. The BCL applied to every authorized sale of hardware that had Solaris 8 or 9 installed on it (the Oracle hardware typically had Solaris pre-loaded on the hardware before delivery, but Oracle's customers also had the ability to either receive Solaris on hard media with the BCL accompanying the actual delivered media, or in the later years, download Solaris and agree to the BCL coincident with the download). Moreover, the number of users pursuant to the BCL was not restricted to the Solaris installation (including error corrections) on a specific piece hardware, rather was for "internal use only" and "for the number of users and class of computer hardware for which the corresponding fee has been paid."

41.     Oracle released Solaris 10 in 2005. Oracle licensed Solaris 10 pursuant to the Software License Agreement ("SLA"). Upon information and belief, the terms of the SLA were also standard-form and have not been substantively modified since its first issuance in 2005. The SLA, along with what Oracle calls an "entitlement," grants users of Solaris 10 a perpetual, nonexclusive, nontransferable license to the applicable software. The SLA provides a license to use the software for individual personal use and for internal commercial use. The SLA provides that the terms and conditions will apply to all software updates unless those updates contain a separate license and, like the BCL, contains an integration clause precluding changes to the license grant unless made in a writing signed by both parties. Like Solaris 8 and 9, Solaris 10 typically came pre-installed on hardware purchased by Oracle's customer. The customer typically accepted the license agreement typically by booting up the system and accepting the license agreement (in some instances it appears that hard copies of the license were delivered with the hardware). All authorized purchasers of Solaris hardware with a Solaris 10 installation included a license to Solaris 10 and updates. Solaris users can similarly download or obtain copies on hard media from Oracle and receive the same license.

42.     Appleby and Olding are informed and believe, and based thereon allege, that no other agreements, including the various entitlements, modified the rights set forth in the SLA.

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

Because of the existence of strict integration clauses in the operative license agreements for Solaris 8, 9 and 10, no subsequent attempt by Oracle to restrict or otherwise modify their terms would be legally effective. Further, on information and belief, none of the various other purported or potential contractual terms relating to patches attempt to contravene or constrict the original Solaris license rights in the BCL and SLA, including any terms set forth in agreements for the purchase of Oracle hardware, Solaris readme files, Solaris click-through files, General Terms purchase agreements for Solaris, Oracle Store agreement and click-throughs, and the Terms of Use relating to the My Oracle Support ("MOS") and Oracle.com websites. For example, the "User License Agreement" readme file which has been, and on information and belief continues to be, utilized by Oracle as an accompanying file to patches downloaded from MOS includes the following definition of "Software":

> "Software" shall mean software and related documentation, including without limitation error corrections or patches, updates, and tools that are made available on Sun's knowledge database, which you may know as SunSolve or the SunSpectrum Member Support Center, or other Sun web site.

43.     This readme file sets forth explicit confirmation, for the stated purpose of "clarity," that its terms are not intended to supersede any original license grants, but rather that the terms of the original license agreements relating to the version of Solaris for which the patch is sought continues to apply to the downloaded patch (i.e., the BCL for Solaris 8 or 9, and the SLA and accompanying entitlement for Solaris 10).

> To the extent that your right to reproduce, distribute and/or use Software and Information is documented in one or more separate written agreements between you and Sun, including any written agreement that accompanies the Software and Information, such as a click-through license agreement that you accept before accessing the Software or Information (each a "Separate Agreement"), the terms and conditions of those Separate Agreements shall govern your rights.
> For clarity, your right to reproduce, distribute and/or use Software in the form of an update, error correction or patch (collectively, "Updates") is commonly governed by the license that governs the underlying software code to which the Update pertains. Therefore, to the extent that you have the right to access Updates, your license with Sun that pertains to the underlying software code will typically govern your right to reproduce, distribute and/or use such Software.

44.     Appleby and Olding are informed and believe, and based thereon allege, that the

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

vast majority of allegations in this case involve persons who were authorized purchasers of Solaris hardware (and were in many instances former consumers of Oracle supplied support for those systems) and had valid licenses for any and all versions of Solaris installed on the hardware. Also, Terix's customers also routinely warranted to Terix as part of the contracting process that they had valid Solaris licenses for all systems placed under Terix support.

45.     Moreover, virtually all the patches at issue in this case were licensed to the general public pursuant to the Common Development and Distribution License ("CDDL") when Oracle released Solaris 10 (and most of the updates) as open source software. The CDDL grants to the public a world-wide, royalty-free, non-exclusive license to use, reproduce, modify, display, perform, sublicense and distribute virtually all the patches at issue in the case.

46.     Appleby and Olding are informed and believe, and based thereon allege, that all alleged infringements were covered expressly by one or more of the above licenses either by Terix acting as the licensees' agent or the licensee itself.

47.     Also, much of the software at issue was released to the public as either "public patches" or free firmware and could be obtained without expressly agreeing to additional license terms, e.g., a person could access Oracle's on-line support resource and download the vast majority of patches or firmware at issue without charge or any type of agreement. Many of the patches at issue in this case could be obtained through the provision of time and materials support directly from Oracle. In those cases, the recipients of those patches typically did not have to expressly agree to any license terms. These interactions create an implied license to any of the patches that were or could be acquired by this method. The interaction created a non-exclusive, perpetual license to use the software that was acquired and/or available.

48.     Appleby and Olding are informed and believe, and based thereon allege, that with regard to firmware, Oracle has never required a license for the acquisition of firmware. Further, all firmware was freely available for download from Oracle websites until mid-2011, and since that time Oracle has taken no steps to monitor or control the unfettered distribution and public sharing of firmware, including taking no steps to bring legal actions against parties that utilized firmware

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  until the filing of Oracle's First Amended Complaint in the Terix I case in March 2014.

2  Accordingly, to the extent that firmware is copyrightable, purchasers of Oracle hardware and users

3  of firmware have been provided with an implied license for all appropriate uses.

**Eighth Affirmative Defense**

5  49.  Oracle's copyright claim is barred to the extent that Oracle claims rights to

6  elements of Solaris and/or Oracle firmware that are functional, are not original, or are otherwise

7  not protectable by copyright and/or are not protected by the asserted copyrights.

8  50.  Appleby and Olding are informed and believe, and based thereon allege, that

9  Oracle claims to own valid and enforceable copyrights pursuant to the following registrations (the

10  "Oracle Copyrights"):

| Title | Registration Date | Registration No. |
|-------|-------------------|------------------|
| Solaris 8 (SPARC Platform Edition) | June 19, 2000 | TX 5-138-319 |
| Solaris 8 (Intel Platform Edition) | June 19, 2000 | TX 5-196-384 |
| Solaris 9 operating system | August 7, 2002 | TX 5-586-147 |
| Solaris 10 operating system | April 19, 2005 | TX 6-086-753 |
| Solaris 11 operating system | February 19, 2014 | TX 7-808-942 |
| Oracle System Firmware 6.7.10 | June 19, 2014 | TX 7-851-653 |
| Oracle System Firmware 7.3.0.a | June 19, 2014 | TX 7-851-666 |
| Oracle System Firmware 8.0.0.e | June 19, 2014 | TX 7-851-615 |
| Oracle System Firmware 8.0.4.b | June 19, 2014 | TX 7-851-695 |
| Oracle System Firmware 8.1.4.h | June 19, 2014 | TX 7-851-710 |
| Oracle System Firmware 9.0.0.d | June 19, 2014 | TX 7-851-699 |
| Oracle System Firmware 9.0.1.f | June 19, 2014 | TX 7-851-513 |
| Oracle System Firmware 9.0.0.i | June 19, 2014 | TX 7-851-509 |
| Oracle System Firmware 9.1.0.i | June 19, 2014 | TX 7-851-514 |

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

51.     With respect to the versions of Solaris subject to copyright registrations identified above,  and in the First Amended Complaint in this case, Appleby and Olding are informed and believe, and based thereon allege, that elements of the Solaris source and object code consist of functional, efficiency-driven and structural elements, and original methods of operation. In particular, Appleby and Olding are informed and believe, and based thereon allege, that at least some of the Solaris patches and updates address compatibility issues with, for example, hardware components. Likewise, Appleby and Olding are informed and believe, and based thereon allege, that bug fixes are likely to be entirely structural in nature and driven by the requirements of the underlying Solaris operating system and hardware. Such expressions in Solaris and Solaris patches and updates are not protectable under 17 U.S.C. § 102(b).

52.     Appleby and Olding are informed and believe, and based thereon allege, that elements of the firmware versions subject to copyright registrations identified above and in the First Amended Complaint in this case consist of functional, efficiency-driven and structural elements, and original methods of operation. In particular, Appleby and Olding are informed and believe, and based thereon allege, that at least some of the firmware updates address compatibility issues with, for example, hardware components. Likewise, Appleby and Olding are informed and believe, and based thereon allege, that much or all of the firmware at issue is entirely functional in nature, and driven by the established external requirements of the underlying hardware and Solaris operating system. Such expressions in Oracle firmware are not protectable under 17 U.S.C. § 102(b).

53.     Appleby and Olding are informed and believe, and based thereon allege, that some or all of the allegedly copyrighted works that Oracle alleges were infringed have not been registered with the U.S. Copyright Office, and therefore Oracle's copyright infringement claim as to these unregistered works is therefore barred by 17 U.S.C. § 411. Oracle has copyright registrations that purport to relate to major releases of Solaris, and these copyright registrations do not indicate that they relate to or incorporate any sub-versions, updates, patches or bug fixes. Appleby and Olding are informed and believe, and based thereon allege, that Oracle does not have

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

1    copyright registrations covering all of the materials that Oracle alleges or contends Terix has used

2    or copied.

3            54.    All of the Oracle Copyrights purport to be derivative of earlier works. With respect

4    to the Oracle Copyrights pertaining to the Solaris operating system identified above and in the

5    First Amended Complaint in this case, Oracle did not identify the prior works on which these

6    derivative works are based beyond listing previous copyright registrations and making vague

7    references to materials such as "prior works" and "licensed in components." With respect to the

8    Oracle copyrights pertaining to firmware, Oracle referenced only "prior works." As a result, the

9    registrations for the Oracle Copyrights cover only the precise changes made to the most recent of

10   the prior published Oracle works, with the result that, upon information and belief, many of the

11   patches and updates at issue in this litigation are not covered by any of the Oracle Copyrights.

12                              **Ninth Affirmative Defense**

13           55.    Appleby and Olding are informed and believe, and based thereon allege, that

14   Oracle claims to own valid and enforceable copyrights pursuant to the following registrations (the

15   "Oracle Copyrights"):

16

| Title | Registration Date | Registration No. |
|---|---|---|
| Solaris 8 (SPARC Platform Edition) | June 19, 2000 | TX 5-138-319 |
| Solaris 8 (Intel Platform Edition) | June 19, 2000 | TX 5-196-384 |
| Solaris 9 operating system | August 7, 2002 | TX 5-586-147 |
| Solaris 10 operating system | April 19, 2005 | TX 6-086-753 |
| Solaris 11 operating system | February 19, 2014 | TX 7-808-942 |
| Oracle System Firmware 6.7.10 | June 19, 2014 | TX 7-851-653 |
| Oracle System Firmware 7.3.0.a | June 19, 2014 | TX 7-851-666 |
| Oracle System Firmware 8.0.0.e | June 19, 2014 | TX 7-851-615 |
| Oracle System Firmware 8.0.4.b | June 19, 2014 | TX 7-851-695 |
| Oracle System Firmware 8.1.4.h | June 19, 2014 | TX 7-851-710 |
| Oracle System Firmware 9.0.0.d | June 19, 2014 | TX 7-851-699 |
| Oracle System Firmware 9.0.1.f | June 19, 2014 | TX 7-851-513 |
| Oracle System Firmware 9.0.0.i | June 19, 2014 | TX 7-851-509 |
| Oracle System Firmware 9.1.0.i | June 19, 2014 | TX 7-851-514 |

27           56.    Oracle is misusing these copyrights by attempting to stifle competition and

28

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

leverage its rights under the United States Copyright Act to force its customers to use only Oracle support services, in order to gain a monopoly over support services related to Oracle products and to prevent legitimate competition for these support services and product.

57.     In 2010, Oracle began putting in place new policies aimed at monopolizing the market for support for Sun hardware systems by taking business away from the TPMs. These policy-changes included the following:

a.     Requiring customers have "all or nothing" support coverage for their Oracle systems, such that for one system to be covered by Oracle, all systems must be covered;

b.     Eliminating time and materials support services;

c.     Refusing to recognize the rights of customers who had licensed Solaris to receive patches, bug fixes and updates without paying for costly support packages from Oracle;

d.     Requiring customers to pay punitive reinstatement fees of 150% of missed support fees to regain Oracle support – i.e., access to patches, bug fixes and updates;

e.     Aggressively denying access to patches, bug fixes and updates for Solaris and firmware to customers who do not get their support coverage from Oracle;

f.     Requiring customers to have operating system support agreements with Oracle to obtain any patches, bug fixes or updates for Solaris; and

g.     Requiring customer to have comprehensive system support agreements with Oracle to obtain any patches, bug fixes or updates for firmware on Oracle computer systems, that in many instances precludes the ability to purchase spare parts on the open market and forces customers to pay for support that is not wanted or needed. Oracle has denied that this was ever its policy, but its support policies, statements to a TPM trade group, and statements to its customers prove that this has been Oracle policy and remains so as recently as 2014.

58.     Oracle enforced its new support policies by coercing customers to buy support packages they did not want. Although Oracle competes with other OEMs in the sale of its hardware systems, Appleby and Olding are informed and believe, and based thereon allege, that Oracle dominates and controls the market for support services on Oracle hardware systems,

Landau Gottfried & Berger LLP
ATTORNEYS AT LAW
Los Angeles, California

including the market for such services for the Solaris operating system that frequently runs on the Oracle systems. Appleby and Olding are informed and believe, and based thereon allege, that with the possible exception of certain open source software, Oracle has a 100% monopoly in the market for its own proprietary software, as well as in the market for supplying the patches, bug fixes and updates to this software. Appleby and Olding are informed and believe, and based thereon allege, that Oracle also has a 100% monopoly in the market for firmware and associated patches, fixes and updates that run on Oracle hardware systems.

59.    Oracle offers two primary types of support packages for Oracle hardware systems: (a) a comprehensive package including hardware and software support, such as Oracle Premier Support for Systems; and (b) a package that covers Solaris support such as Oracle Premier Support for Operating Systems. Oracle's support packages are generally set for annual terms and priced as a percentage of the purchase price. Oracle is aware that TPMs may offer lower prices on similar support offerings, and Oracle considers TPMs to be its competition in the market for support services on Oracle systems.

60.    After the acquisition of Sun closed in 2010, Oracle took the position with customers who own Oracle hardware systems running Solaris that the only legitimate manner in which those customers may obtain bug fixes, patches or updates to the Solaris operating system is by purchasing at a minimum a service package for operating system support, such as Oracle Premier Support for Systems or Oracle Premier Support for Operating Systems. Oracle has similarly taken the position that customers cannot obtain firmware updates for Oracle hardware systems unless they have a comprehensive support policy such as Oracle Premier Support for Systems (which effectively limits the ability of Oracle's customers to purchase many spare parts from third parties since the hardware in linked with the firmware).

61.    Oracle's policy that licensees of Solaris are not entitled to patches, bug fixes or updates to Solaris unless they pay for a support package from Oracle deprives these customers of Solaris software they have already licensed and related functionality for their Oracle systems. The original license and entitlement documentation that these customers received from Sun gave these

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   customers the right to receive patches, bug fixes and updates to Solaris. Oracle is charging

2   customers for the right to access software that these customers already have licensed.

3       62.     Appleby and Olding are informed and believe, and based thereon allege, that

4   Oracle chooses not to offer hardware support as a standalone option on Oracle systems for the vast

5   majority of its support customers. Appleby and Olding are informed and believe, and based

6   thereon allege, that Oracle does not offer time and materials support services for Oracle systems if

7   such services are included in one of Oracle's primary "Premier" support offering, and that Oracle

8   never sells Solaris patches or firmware patches separately (apart from inclusion in an expensive

9   and more comprehensive support package).

10      63.     Appleby and Olding are informed and believe, and based thereon allege, that

11  customers who have bought Oracle hardware systems with the Solaris operating system are

12  unlikely to switch to competing hardware systems due to the excessive cost of support packages

13  from Oracle because new hardware systems are significantly more expensive than support

14  contracts for any given time period. It is also difficult for customers to switch to competing

15  hardware systems because systems running non-Solaris operating systems may not offer all of the

16  advantages for high-end servers and are not necessarily reasonable substitutes.

17      64.     Oracle's control over the market for Solaris patches, bug fixes and firmware, and

18  for the firmware updates necessary to keep Oracle systems running properly is demonstrated by

19  the fact that its prices for the support packages that give customers access to these patches, bug

20  fixes and updates are substantially higher than the otherwise comparable support packages offered

21  by TPMs like Terix. In fact, Appleby and Olding are informed and believe, and based thereon

22  allege, that the costs of OEM-provided support on a Oracle computer system more than doubled

23  after Oracle acquired Sun in 2010.

24      65.     Oracle's refusal to sell Solaris and firmware patches to customers of Oracle

25  equipment unless they also purchase support packages constitutes unlawful tying in violation of

26  the Sherman Act, 15 U.S.C § 1, and California Business & Professions Code § 16720 et seq.

27  Oracle's illegal tying has harmed Terix and its customers, and has harmed and continues to harm

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

1   competition in the market for support services on Oracle systems. Oracle's anticompetitive

2   conduct affects a substantial volume of interstate commerce in the relevant markets and is also

3   illegal under the Sherman Act, 15 U.S.C. § 2.

4        66.    The provision of hardware support for Oracle computer systems is a separate

5   product from the supply of patches, bug fixes and updates to Solaris and firmware. These

6   products, in turn, are separate products from the Oracle computer systems themselves. There are

7   distinct national markets in the United States for hardware support for Oracle computer systems,

8   and for the supply of patches, bug fixes and updates to Solaris and firmware.

9        67.    Terix, like other TPMs, has provided and is able to provide hardware support

10  services for Oracle computer systems, but Oracle is prohibiting Terix and other TPMs from

11  providing or assisting customers in obtaining patches, bug fixes and updates to Solaris or

12  firmware.

13       68.    Oracle has conditioned the purchase of patches, bug fixes and updates (the "tying

14  products") on the purchase of support packages for hardware and software running on Oracle

15  systems (the "tied products"). For instance, Appleby and Olding are informed and believe, and

16  based thereon allege, that Oracle specifically told Bank of New York Mellon ("BNYM") that it

17  could not obtain patches, bug fixes or updates on the Solaris operating system or firmware on the

18  bank's Oracle systems because it did not have certain types of support contracts with Oracle.

19       69.    Appleby and Olding are informed and believe, and based thereon allege, that

20  Oracle is the only source for patches, bug fixes and updates on the Solaris operating system and

21  firmware on Oracle systems, and that there are no reasonable substitutes. Oracle is not, however,

22  the only source for hardware and/or software support services for Oracle systems.

23       70.    Oracle therefore has sufficient market power in these patches, bug fixes and

24  updates to coerce a substantial percentage of customers to purchase support packages on their

25  Oracle systems from Oracle. Oracle's coercive conduct has been effective in harming and even

26  eliminating competition in the market for support services on Oracle systems by forcing customers

27  to obtain those support services from Oracle instead of from lower priced and/or higher quality

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

31

1    TPMs such as Terix.

2        71.    Oracle's unlawful tying of the purchase of the "tying products" on the purchase of

3    the "tied products" amounts to a de facto requirement that customers not do business with any of

4    the TPMs like Terix which competes with Oracle in the market for support services. This

5    constitutes an improper extension of the copyright monopoly by Oracle to non-copyrighted

6    products and services.

7        72.    In addition to Oracle's copyright misuse by means of its unlawful tying practices,

8    Oracle has also included terms in the licenses for Solaris that specifically prevent customers from

9    using TPMs to support Sun/Oracle hardware systems. These license terms prohibit both the use of

10   Solaris by TPMs in supporting their customers, and prohibit customers from allowing TPMs to

11   access Solaris in any way.

12       73.    Specifically, Solaris license terms provide that:

13       "The scope of your license does not include any right, express or implied, (i) to
         access, reproduce, distribute, display or use the Software or Information to provide
14       diagnostic, maintenance, repair or technical support services on behalf of any third
         party for your direct or indirect commercial gain or advantage without Sun's prior
15       written authorization, or (ii) for any third party to access, reproduce, distribute,
         display or use the Software or Information to provide diagnostic, maintenance,
16       repair or technical support services on your behalf for such party's direct or indirect
         commercial gain or advantage, without Sun's prior written authorization."
17

18       74.    Through the misconduct alleged above, including but not limited to Oracle's illegal

19   tying and enforcement of support policies that deprive licensees to their rights to patches, bug

20   fixes and updates, and to Oracle's effort to extend copyright protection for Solaris and firmware to

21   uncopyrighted and uncopyrightable software and hardware support services, Oracle is attempting

22   to use the Oracle Copyrights on the Solaris operating system and firmware in a manner adverse to

23   the public policy behind the copyright laws. Oracle's conduct and policies essentially serve as a

24   prohibition against owners of Oracle equipment from using TPMs like Terix who compete with

25   Oracle in the market for support services, and this misconduct constitutes misuse of its copyrights

26   by Oracle. Oracle's conduct and policies also prevent TPMs like Terix from developing competing

27   products and services.

28

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

1    75.    Terix and its customers were directly harmed by Oracle's anticompetitive misuse of

2   its Solaris copyrights.

3   **Tenth Affirmative Defense**

4    76.    Oracle's claim under the California Uniform Voidable Transactions Act is barred

5   against Appleby and Olding on the grounds that neither is a person for whose benefit the alleged

6   voidable transfer was made under California Civil Code § 3439.08(b).

7   **Eleventh Affirmative Defense**

8    77.    Oracle's claim under the California Uniform Voidable Transactions Act is barred

9   against Defendants on the grounds that TUSA, Ermine IP, and Ermine Services are good faith

10  transferees that took for value under California Civil Code § 3439.08(b).

11  **Twelfth Affirmative Defense**

12   78.    One or more of Oracle's claims are barred, in whole or in part, under the doctrine

13  of accord and satisfaction.

14  **Thirteenth Affirmative Defense**

15   79.    One or more of Oracle's claims are barred, in whole or in part, to the extent that

16  Oracle failed to take reasonable action to mitigate the alleged injuries, damages, and/or losses

17  alleged in the FAC.

18  **Fourteenth Affirmative Defense**

19   80.    One or more of Oracle's claims are barred, in whole or in part, because its alleged

20  injuries, losses, and/or damages were caused by the superseding and intervening acts, omissions,

21  negligence or other tortious conduct of parties other than the Defendants including, but not limited

22  to Sherwood Partners, Inc. and Terix (assignment for the benefit of creditors) LLC.

23  **Fifteenth Affirmative Defense**

24   81.    One or more of Oracle's claims is barred, in whole or in part, under the California

25  Uniform Voidable Transaction Act due to Oracle's failure to join Sherwood Partners, Inc. as an

26  indispensable party.

27  //

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST

WHEREFORE, Defendants prays for judgment as follows:

1. That Oracle take nothing by reason of the FAC;

2. For costs of suit incurred herein, including attorneys' fees; and

3. For such other and further relief as the Court may deem just and proper.

Dated: September 26, 2016          LANDAU GOTTFRIED & BERGER LLP
                                   PETER M. BRANSTEN
                                   RACHEL FRANZOIA

                                   By: ____/s/ Peter M. Bransten_____
                                            Peter M. Bransten

                                   Attorneys for Defendants Bernd Appleby, James Olding,
                                   TUSA, Inc., Ermine IP, Inc., and Ermine Services, LLC

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendants hereby demand a jury trial as to all issues so triable.

Dated: September 26, 2016          LANDAU GOTTFRIED & BERGER LLP
                                   PETER M. BRANSTEN
                                   RACHEL FRANZOIA

                                   By: ____/s/ Peter M. Bransten_____
                                            Peter M. Bransten

                                   Attorneys for Defendants Bernd Appleby, James Olding,
                                   TUSA, Inc., Ermine IP, Inc., and Ermine Services, LLC

ANSWER TO FAC
Case No.: 3:16-cv-02090-JST